## WELCH *v.* SWASEY ET AL., AS THE BOARD OF APPEAL FROM THE BUILDING COMMISSIONER OF THE CITY OF BOSTON.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 153. Argued April 15, 16, 1909.—Decided May 17, 1909.

Whether a state statute is illegal because it delegates legislative power to a commission does not raise a Federal question.

A statute limiting the height of buildings cannot be justified under the police power unless it has some fair tendency to accomplish, or aid in the accomplishment of, some purpose for which that power can be used; if the means employed, pursuant to the statute, have no real substantial relation to such purpose, or if the statute is arbitrary, unreasonable and beyond the necessities of the case, it is invalid as taking property without due process of law.

In determining the validity of a state statute affecting height of buildings, local conditions must be considered; and, while the judgment of the highest court may not be conclusive, it is entitled to the greatest respect, and will not be interfered with unless clearly wrong.

Where the highest court of the State has held that there is reasonable ground for classification between the commercial and residential portions of a city as to the height of buildings, based on practical and not æsthetic grounds, and that the police power is not to be exercised for merely æsthetic purposes, this court will not hold that such a statute, upheld by the state court, prescribing different heights in different sections of the city is unconstitutional as discriminating against, and denying equal protection of the law to, the owners of property in the district where the lower height is prescribed.

Where there is justification for the enactment of a police statute limiting the height of buildings in a particular district, an owner of property in that district is not entitled to compensation for the reasonable interference with his property by the statute.

Chapters 333 of the acts of 1904 and 383 of the acts of 1905 of Massachusetts, limiting the heights of buildings in Boston and prescribing different heights in different sections of the city are, in view of the decision of the highest court of Massachusetts holding that the discrimination is based upon reasonable grounds, a proper exercise of the police power of the State, and are not unconstitutional under the equal protection and due process clauses of the Fourteenth Amendment.

193 Massachusetts, 364, affirmed.

THE plaintiff in error duly applied to the justices of the Supreme Judicial Court of the State of Massachusetts for a mandamus against the defendants, who constitute a board of appeal from the Building Commissioner of the City of Boston, to compel the defendants to issue a permit to him to build on his lot on the corner of Arlington and Marlborough streets, in that city. The application was referred by the justice presiding to the full court, and was by it denied (193 Massachusetts, 364), and the plaintiff has brought the case here by writ of error.

The action of defendants in refusing the permit was based on the statutes of Massachusetts, chap. 333 of the acts of 1904, and chap. 383 of the acts of 1905. The two acts are set forth in the margin.[1] The reason for the refusal to grant the building

---

[1] Acts of 1904, Chapter 333.

An Act Relative to the Height of Buildings in the City of Boston.

*Be it enacted, etc., as follows:*

SECTION 1. The city of Boston shall be divided into districts of two classes, to be designated districts A and B. The boundaries of the said districts, established as hereinafter provided, shall continue for a period of fifteen years, and shall be determined in such manner that those parts of the city in which all or the greater part of the buildings situate therein are at the time of such determination used for business or commercial purposes shall be included in the district or districts designated A, and those parts of the city in which all or the greater part of the buildings situate therein are at the said time used for residential purposes or for other purposes not business or commercial shall be in the district or districts designated B.

SEC. 2. Upon the passage of this act the mayor of the city shall appoint a commission of three members, to be called "Commission on Height of Buildings in the City of Boston." The commission shall immediately upon its appointment give notice and public hearings, and shall make an order establishing the boundaries of the districts aforesaid, and within one month after its appointment shall cause the same to be recorded in the registry of deeds for the county of Suffolk. The boundaries so established shall continue for a period of fifteen years from the date of the said recording. Any person who is aggrieved by the said order may, within thirty days after the recording thereof, appeal to the commission for a revision; and the commission may, within

permit was because the building site for the proposed building
was situated in one of the districts B, as created under the pro-
visions of the acts mentioned, in which districts the height of

six months after its appointment, revise such order, and the revision
shall be recorded in the registry of deeds for the county of Suffolk, and
shall date back to the original date of recording. The members of the
commission shall serve until the districts have been established as afore-
said; and any vacancy in the commission caused by resignation, death
or inability to act shall be filled by the mayor, on written application by
the remaining members of the commission or of ten inhabitants of the
city. The members of the commission shall receive such compensation
as the mayor shall determine.

Sec. 3. In the city of Boston no building shall be erected to a height
of more than one hundred and twenty-five feet above the grade of the
street in any district designated-A, and no building shall be erected to
a height of more than eighty feet above the grade of the street in any
district designated B. These restrictions shall not apply to grain or
coal elevators or sugar refineries in any district designated A, nor to
steeples, domes, towers or cupolas erected for strictly ornamental
purposes, of fireproof material, on buildings of the above height or less
in any district. The Supreme Judicial Court and the Superior Court
shall each have jurisdiction in equity to enforce the provisions of this
act, and to restrain the violation thereof.

Sec. 4. This act shall take effect upon its passage. (Approved
May 13, 1904.)

Acts of 1905, Chapter 383.

An Act Relative to the Height of Buildings in the City of Boston.

*Be it enacted, etc., as follows:*

Section 1. Within thirty days after the passage of this act the
mayor of the city of Boston shall appoint a commission of three mem-
bers to determine, in accordance with the conditions hereinafter pro-
vided, the height of buildings within the district designated by the
commission on height of buildings in the city of Boston as district B,
in accordance with chapter three hundred and thirty-three of the
acts of the year nineteen hundred and four.

Sec. 2. Said commission shall immediately upon its appointment
give notice, and public hearings, and shall make an order establishing
the boundaries of or otherwise pointing out such parts, if any, of said
district B as it may designate in which buildings may be erected to a
height exceeding eighty feet but not exceeding one hundred feet, and
the height between eighty feet and one hundred feet to which build-

the buildings is limited to eighty, or, in some cases, to one hundred feet, while the height of buildings in districts A is limited to one hundred and twenty-five feet. The height of the building which plaintiff in error proposed to build and for which he asked the building permit was stated by him in his application therefor to be one hundred and twenty-four feet, six inches.

The designation of what parts in districts B and upon what conditions a building could be therein erected more than eighty while not more than one hundred feet high was to be made by a commission, as provided for in the act of 1905, and the commission duly carried out the provisions of the act in that respect. The sole reason for refusing the permit was on

ings may so be erected, and the conditions under which buildings may be erected to said height, except that such order may provide for the erection of buildings as aforesaid to a height not exceeding one hundred and twenty-five feet in that portion of said district B which lies within fifty feet from the boundary line separating said district B from the district designated by the commission on height of buildings in the city of Boston as district A, in accordance with said chapter three hundred and thirty-three, provided said boundary line divides the premises affected by such order from other adjoining premises, both owned by the same person or persons, and within sixty days after its appointment shall cause the same to be recorded in the registry of deeds for the county of Suffolk. Any person who is aggrieved by such order may, within sixty days after the recording thereof, appeal to the commission for a revision; and the commission may, previous to the first day of January in the year nineteen hundred and six, revise such order, and the revision shall be recorded in the registry of deeds for the county of Suffolk and shall date back to the original date of recording. The boundaries so established shall continue for a period of fifteen years from the date of the recording of the order made by the commission on height of buildings in the city of Boston under chapter three hundred and thirty-three of the acts of the year nineteen hundred and four. The members of the commission shall receive such compensation as the mayor shall determine.

SEC. 3. Within such parts of district B as may be designated by the commission as aforesaid (which may, except as hereinafter provided, include any parts of said district B affected by prior acts limiting the height of buildings) buildings may be erected to the height fixed by the commission as aforesaid, exceeding eighty feet but not exceeding

account of the proposed height of the building, being greater than the law allowed.

The plaintiff in error contended that the defendants were not justified in their refusal to grant the permit, because the statutes upon which their refusal was based were unconstitutional and void, but he conceded that if they were valid the defendants were justified in their refusal.

The court, while deciding that mandamus was a proper remedy, held that the statutes and the reports of the commissions thereunder were constitutional.

*Mr. Burton Edward Eames,* with whom *Mr. Charles H.*

one hundred feet, or one hundred and twenty-five feet, as hereinbefore provided, and subject to such conditions as may be fixed as aforesaid by the commission; but within the following described territory, to wit; Beginning at the corner of Beacon street and Hancock avenue, thence continuing westerly on Beacon street to Joy street, thence continuing northerly on Joy street to Myrtle street, thence continuing easterly on Myrtle street to Hancock street, thence continuing southerly on Hancock street and Hancock avenue to the point of beginning, no building shall be erected to a height greater than seventy feet, measured on its principal front, and no building shall be erected on a parkway, boulevard or public way on which a building line has been established by the board of park commissioners or by the board of street commissioners, acting under any general or special statute, to a greater height than that allowed by the order of said boards; and no building upon land any owner of which has received and retained compensation in damages for any limitation of height or who retains any claim for such damages shall be erected to a height greater than that fixed by the limitation for which such damages were received or claimed.

Sec. 4. No limitations of the height of buildings in the city of Boston shall apply to churches, steeples, towers, domes, cupolas, belfries or statuary not used for purposes of habitation, nor to chimneys, gas holders, coal or grain elevators, open balustrades, skylights, ventilators, flagstaffs, railings, weather vanes, soil pipes, steam exhausts, signs, roof houses not exceeding twelve feet square and twelve feet high, nor to other similar constructions such as are usually erected above the roof line of buildings.

Sec. 5. This act shall take effect upon its passage. (Approved May 8, 1905.)

*Tyler* and *Mr. Owen D. Young* were on the brief, for plaintiff in error:

The first point in the argument of the plaintiff in error is that the purpose of these acts is not within the sphere of purposes for which the police power may lawfully be exercised.

The court will look to the real purpose of the statute. *Watertown* v. *Mayo*, 109 Massachusetts, 315, 319; *Austin* v. *Murray*, 16 Pick. 121, 126; *State* v. *Redmon*, 134 Wisconsin, 89, 107; *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Brimmer* v. *Rebman*, 138 U. S. 78, 82; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Soon Hing* v. *Crowley*, 113 U. S. 703, 710; *People* v. *Compagnie Generale Transatlantique*, 107 U. S. 59, 63; *Henderson* v. *Mayor of New York*, 92 U. S. 259; *Cal. Reduction Co.* v. *Sanitary Wks.*, 199 U. S. 306; *Health Dept.* v. *Rector*, 145 N. Y. 32, 40; *Matter of Jacobs*, 98 N. Y. 98, 110; *Farist Steel Co.* v. *Bridgeport*, 60 Connecticut, 278, 292; *Priewe* v. *Wisconsin &c. Imp. Co.*, 103 Wisconsin, 537, 549.

In determining what is the real purpose of the statute, the court will consider the history of the times and the circumstances leading up to its enactment. *Holy Trinity Church* v. *United States*, 143 U. S. 457.

The purpose may also be inferred from the terms of the act itself. *Lochner* v. *New York*, 198 U. S. 45; *Talbot* v. *Hudson*, 16 Gray, 417, 420; *Simpson* v. *Story*, 145 Massachusetts, 497, 498; *Pollock* v. *Farmers L. & T. Co.*, 157 U. S. 429, 558 *et seq.*; *Farist Steel Co.* v. *Bridgeport*, 60 Connecticut, 278.

The real purpose of these acts was æsthetic.

This appears from the circumstances under which they were passed. Contemporaneous statutes and contemporaneous litigation, tend to the conclusion that they were aimed not at dangers to the public health, safety, morals or well-being, but that they were designed purely for purposes which may be called æsthetic, to preserve architectural symmetry and regular sky-lines.

The first act was passed in the legislative session of 1903–1904, very shortly after the decisions by the Supreme Judicial

Court of Massachusetts and by this court sustaining the statutes which limited the height of buildings in the vicinity of Copley Square and upon Beacon Hill as lawful exercises of the power of eminent domain. *Attorney-General* v. *Williams*, 174 Massachusetts, 476 (October, 1899); *Parker* v. *Commonwealth*, 178 Massachusetts, 199 (March, 1901); *Attorney-General* v. *Williams*, 178 Massachusetts, 330 (March, 1901); *Williams* v. *Parker*, 188 U. S. 491 (February, 1903).

The police power cannot properly be exercised for an æsthetic purpose.

Although property may be taken by right of eminent domain for æsthetic purposes,—*Higginson* v. *Nahant*, 11 Allen, 530; *Attorney-General* v. *Williams*, 174 Massachusetts, 476,—that purpose is not sufficient to warrant the exercise of the police power in such manner as to interfere with the use of property. *Commonwealth* v. *Boston Ad. Co.*, 188 Massachusetts, 348; *St. Louis* v. *Hill*, 116 Missouri, 527; *St. Louis* v. *Dorr*, 145 Missouri, 466; *People* v. *Green*, 85 App. Div. (N. Y.) 400; *Bostock* v. *Sams*, 95 Maryland, 400; *Posting Sign Co.* v. *Atlantic City*, 71 N. J. L. 72; *Passaic* v. *Patterson Bill Post. Co.*, 72 N. J. L. 285; *Chicago* v. *Gunning System*, 214 Illinois, 628; Article on "Public Æsthetics," by Wilbur Larremore, in Harvard Law Review, November, 1906, p. 42.

The infringement upon rights of property involved in these acts is unreasonable.

The principle of reasonableness is a principle of proportionateness. The courts appear to have adopted the principle that the legislative acts under the police power, when affecting private rights, must have "some fair and reasonable relation of means to end which courts can see and admit the force of," and that the infringement of rights must bear a reasonable relation to the public necessity, *i. e.*, the measure must be proportionate to the end in view. *Ex parte Whitwell*, 98 California, 73; *State* v. *Speyer*, 67 Vermont, 502; *Commonwealth* v. *Tewksbury*, 11 Met. 55, 57; Cooley on Constitutional Limitations (7th ed.), 878; *Miller* v. *Horton*, 152 Massachu-

setts, 540, 547; *State* v. *Ashbrook*, 154 Missouri, 375; *People* v. *Gillson*, 109 N. Y. 389, 403; *Health Department* v. *Rector*, 145 N. Y. 32; *Matter of Jacobs*, 98 N. Y. 98, 110; *Mugler* v. *Kansas*, 123 U. S. 623; *Chicago &c. Ry.* v. *Drainage Commissioners*, 200 U. S. 561, 593; *Railway Co.* v. *Husen*, 95 U. S. 465; *Sawyer* v. *Davis*, 136 Massachusetts, 239; *Rideout* v. *Knox*, 148 Massachusetts, 368.

Any regulation which deprives any person of a profitable use of his property constitutes a taking of property, and entitles him under the Constitution to compensation, unless the invasion of rights is so slight as to permit the regulation to be justified under the police power. *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, 179; *United States* v. *Lynah*, 188 U. S. 445; *Sweet* v. *Rechel*, 159 U. S. 380, 399; *Eaton* v. *Boston &c. R. R.*, 51 N. H. 504; *Bent* v. *Emery*, 173 Massachusetts, 495; *Grand Rapids* v. *Jarvis*, 30 Michigan, 308, 320, 321; *Matter of Jacobs*, 98 N. Y. 98, 105, 106; *Edwards* v. *Bruorton*, 184 Massachusetts, 529, 532, 533; Holmes, J., in *Miller* v. *Horton*, 152 Massachusetts, 540, 547.

The legislature of Massachusetts in the previous statutes limiting the height of buildings about Copley Square in Boston to the height of ninety feet, and on Beacon Hill, in the vicinity of the State House, in Boston, to a height of seventy feet, recognized that such a regulation involved a taking of property, Stats. 1898, ch. 452; Stats. 1899, ch. 457, and the Supreme Court of Massachusetts, in the decisions sustaining those statutes as exercises of the power of eminent domain, likewise recognized this fact. *Attorney-General* v. *Williams*, 174 Massachusetts, 476; *Parker* v. *Commonwealth*, 178 Massachusetts, 199; *Attorney-General* v. *Williams*, 178 Massachusetts, 330.

Even if the statutes were enacted for some object properly within the scope of the police power, they involve an invasion of private rights which is entirely disproportionate to any of the objects which the legislature might properly have had in view.

The only objects, aside from the æsthetic, which it is at all conceivable might have been in view of the legislature, are the public health or safety, and no public necessity existed for either of those objects sufficient to justify the measures.

· The experience of other cities with buildings much higher than anyone has yet desired to build in Boston, and much higher than the limits fixed by these statutes, goes very strongly to show that the danger of injury to health and the danger from fire where tall buildings are properly constructed are very slight.

·Even if the object or purpose of these acts was within the legitimate sphere of purposes permissible to the police power, yet the classification adopted has no proper relation to either of the possible ostensible objects, but is arbitrary and unreasonable. The constitutional provision for equal protection of the laws means that all persons are to be treated alike. It contemplates the right of the legislature to make reasonable classifications, and the protection given by the law is considered equal if all persons within the classes thus established are treated alike under like circumstances and conditions. *Missouri* v. *Lewis*, 101 U. S. 22; *Magoun* v. *Illinois Savings Bank*, 170 U. S. 283, 293; *Barbier* v. *Connolly*, 113 U. S. 27, 31; *Hayes* v. *Missouri*, 120 U. S. 68, 71.

The classification adopted must be a reasonable one, with reference to the purpose for which the statute is enacted; it cannot be arbitrary. *Gulf &c. Ry.* v. *Ellis*, 165 U. S. 150, 159, 165; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 560; *Atchison &c. R. R.* v. *Mathews*, 174 U. S. 96, 104; *Heath & Milligan* v. *Worst*, 207 U. S. 338.

So far as it may be desirable to do so, the court will take judicial notice of facts of common knowledge, of the location of the lines drawn by the commission, of the situation of various streets, and of the character of the various districts and localities of the city. *Brimmer* v. *Rebman*, 138 U. S. 78; *Minnesota* v. *Barber*, 136 U. S. 313, 321; *Jacobson* v. *Massachusetts*, 197 U. S. 11, 23; *Muller* v. *Oregon*, 208 U. S. 412, 421;

*Siegbert* v. *Stiles*, 39 Wisconsin, 533; *The Montello*, 11 Wall. 411; *Gardner* v. *Eberhart*, 82 Illinois, 316; *Prince* v. *Crocker*, 166 Massachusetts, 347.

The situtation and character of the various districts and localities of the City of Boston being matters of common knowledge, of which the Supreme Judicial Court of Massachusetts would and did take notice, this court is authorized to do likewise as, upon writ of error, it takes judicial notice of all matters which were matters of law in the state court. By analogy, therefore, this court should notice judicially all matters not required to be proved as facts in the state court, including matters of judicial notice. Matters of judicial notice are matters of law.

The classification attempted in these statutes is arbitrary and is not considered, with a purpose to safeguard either the public health or the public safety.

They are special laws, applying only to Boston, and while a reasonable classification of cities may be made, it must be based upon some real difference with reference to the purposes of the act. *Tenement House Department* v. *Moeschen*, 179 N. Y. 325; *Watertown* v. *Mayo*, 109 Massachusetts, 315; *State* v. *Hammer*, 42 N. J. Law, 435, 440; *Bessette* v. *People*, 193 Illinois 334.

The classification attempted within the City of Boston is not based upon reasonable grounds. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 368; *Newton* v. *Belger*, 143 Massachusetts, 598.

The statute gives exceptional rights to property holders in district B whose property is situated within fifty feet of the division line established, provided they also own land on the other side of the division line.

It is provided that the height of buildings in district B above eighty feet shall depend upon the width of the building upon the street.

The statutes create exceptions in favor of certain occupations. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

*Mr. Thomas M. Babson* for defendant in error:

The first question is whether an act limiting the height of buildings is constitutional at all. The statute was enacted, according to the decision of the Supreme Judicial Court of the State, in behalf of the public health and safety, and the Supreme Court of the United States will not strike it down as an unconstitutional interference with private property unless it can plainly see that it has no real and substantial relation to those objects and is a mere arbitrary attack upon the owners of land: *Slaughter-House Cases,* 16 Wall. 36; *Bartemeyer* v. *Iowa,* 18 Wall. 129; *Munn* v. *Illinois,* 94 U. S. 113; *Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Barbier* v. *Connolly,* 113 U. S. 27; *Mugler* v. *Kansas,* 123 U. S. 623; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Lawton* v. *Steele,* 152 U. S. 133; *Holden* v. *Hardy,* 169 U. S. 366; *Fischer* v. *St. Louis,* 194 U. S. 361; *Reduction Co.* v. *Reduction Works,* 199 U. S. 306; *Bacon* v. *Walker,* 204 U. S. 311; *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349.

The right of the State to regulate the construction of buildings has been recognized and exercised ever since the population of our cities became dense enough to make regulation desirable and necessary for the protection of the inhabitants from fire and disease. *Ex parte Fiske,* 72 California, 125; *Baumgartner* v. *Hasty,* 100 Indiana, 575; *Mt. Vernon First National Bank* v. *Sarlls,* 129 Indiana, 201; *Wadleigh* v. *Gilman,* 12 Maine, 403; *Easton* v. *Covey,* 74 Maryland, 262; *Watertown* v. *Mayo,* 109 Massachusetts, 315; *Salem* v. *Maynes,* 123 Massachusetts, 372; *Brady* v. *Northwestern Insurance Co.,* 11 Michigan, 425; *New York Fire Department* v. *Gilmour,* 149 N. Y. 453; *Rochester* v. *West,* 164 N. Y. 510; *Republica* v. *Duquet,* 2 Yeates (Pa.), 493; *Douglass* v. *Commonwealth,* 2 Rawle (Pa.), 262; *Klinger* y. *Bickel,* 117 Pa. St. 326; *City Council* v. *Elford,* 1 McMullan (S. C.), 234; *Knoxville* v. *Bird,* 12 Lea (Tenn.), 121; *Baxter* v. *Seattle,* 3 Washington, 352; *Charlestown* v. *Reed,* 27 W. Va. 681.

Until the introduction within recent years of steel frame

construction, very tall buildings were not practicable, and it is only lately that there has been any need of legislation restricting the height of buildings, for the natural difficulties were formerly sufficient protection to the public.

In determining whether a state statute is aimed and adapted to promote the public welfare, this court will hesitate to overturn a decision of the highest court of the State. The validity of the statute may depend on certain facts, general, notorious and acknowledged within the State, and with which the state courts may be assumed to be exceptionally familiar. They understand the situation which led to the demand for the enactment of the statute, and they appreciate the disastrous results which in all probability would flow from a denial of its validity. *Clark* v. *Nash,* 198 U. S. 361; *Strickley* v. *Highland Boy Mining Co.,* 200 U. S. 527; *Bacon* v. *Walker,* 204 U. S. 311.

What is a reasonable regulation in one city might be unreasonable in another. The Massachusetts legislature has deemed this restriction wise, and its highest court has called it reasonable; their decision should carry great weight.

Plaintiffs in error are not entitled to compensation because there was no taking of this property. This court has never accepted the fanciful doctrine that whatever decreases the value of land is the taking, *pro tanto,* of the owner's property and so unconstitutional unless he is paid for the damage, but has steadfastly adhered to the older and sounder rule that land is not taken unless it is physically entered upon or the owner substantially deprived of the beneficial use. *Smith* v. *Washington,* 20 How. 135; *Transportation Company* v. *Chicago,* 99 U. S. 635; *Osborne* v. *Missouri Pacific R. R. Co.,* 147 U. S. 248; *Gibson* v. *United States,* 166 U. S. 275; *Meyer* v. *Richmond,* 172 U. S. 95; *Sharp* v. *United States,* 191 U. S. 341; *Bedford* v. *United States,* 192 U. S. 217.

Regulations and restrictions upon the use of real property have been imposed which limit its use and impair its value more severely than those in the case at bar without giving rise to any constitutional obligation to compensate the owner.

*Slaughter-House Cases,* 16 Wall. 36; *Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Barbier* v. *Connolly,* 113 U. S. 27; *Mugler* v. *Kansas,* 123 U. S. 623; *Fischer* v. *St. Louis,* 194 U. S. 361.

There is no requirement in the Fourteenth Amendment or elsewhere in the Constitution that the laws of a State be uniform in their application throughout the State. *Missouri* v. *Lewis,* 101 U. S. 22; *Hayes* v. *Missouri,* 120 U. S. 68; *Budd* v. *New York,* 143 U. S. 517, 548; *Gardner* v. *Michigan,* 199 U. S. 325.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The ground of objection of plaintiff in error to this legislation is that the statutes unduly and unreasonably infringe upon his constitutional rights, (*a*) As to taking of property without compensation; (*b*) As to denial of equal protection of the laws.

Plaintiff in error refers to the existence of a general law in Massachusetts applicable to every city therein, limiting the height of all buildings to one hundred and twenty-five feet above the grade of the street (acts of 1891, ch. 355), and states that he does not attack the validity of that act in any respect, but concedes that it is constitutional and valid. See also on same subject acts of 1892, ch. 419, § 25, making such limitation as to the City of Boston. His objection is directed to the particular statutes, because they provide for a much lower limit in certain parts of the City of Boston, to be designated by a commission, and because a general restriction of height as low as eighty or one hundred feet over any substantial portion of the city is, as he contends, an unreasonable infringement upon his rights of property; also that the application of those limits to districts B, which comprise the greater part of the City of Boston, leaving the general one hundred and twenty-five feet limit in force in those portions of the city, which

the commission should designate (being the commercial districts), is an unreasonable and arbitrary denial of equal rights, to the plaintiff in error and others in like situation.

Stating his objections more in detail, the plaintiff in error contends that the purposes of the acts are not such as justify the exercise of what is termed the police power, because, in fact, their real purpose was of an æsthetic nature, designed purely to preserve architectural symmetry and regular skylines, and that such power cannot be exercised for such a purpose. It is further objected that the infringement upon property rights by these acts is unreasonable and disproportioned to any public necessity, and also that the distinction between one hundred and twenty-five feet for the height of buildings in the commercial districts described in the acts, and eighty to one hundred feet in certain other or so-called residential districts, is wholly unjustifiable and arbitrary, having no well-founded reason for such distinction, and is without the least reference to the public safety, as from fire, and inefficient as means to any appropriate end to be attained by such laws.

In relation to these objections the counsel for the plaintiff in error, in presenting his case at bar, made a very clear and able argument.

Under the concession of counsel, that the law limiting the height of buildings to one hundred and twenty-five feet is valid, we have to deal only with the question of the validity of the provisions stated in these statutes and in the conditions provided for by the commissions, limiting the height in districts B between eighty and one hundred feet.

We do not understand that the plaintiff in error makes the objection of illegality arising from an alleged delegation of legislative power to the commissions provided for by the statutes. At all events, it does not raise a Federal question. The state court holds that kind of legislation to be valid under the state constitution and this court will follow its determination upon that question.

We come, then, to an examination of the question whether

these statutes with reference to limitations on height between eighty and one hundred feet and in no case greater than one hundred feet are valid. There is here a discrimination or classification between sections of the city, one of which, the business or commercial part, has a limitation of one hundred and twenty-five feet, and the other, used for residential purposes, has a permitted height of buildings from eighty to one hundred feet.

The statutes have been passed under the exercise of so-called police power, and they must have some fair tendency to accomplish, or aid in the accomplishment of some purpose, for which the legislature may use the power. If the statutes are not of that kind, then their passage cannot be justified under that power. These principles have been so frequently decided as not to require the citation of many authorities. If the means employed, pursuant to the statute, have no real, substantial relation to a public object which government can accomplish; if the statutes are arbitrary and unreasonable and beyond the necessities of the case; the courts will declare their invalidity. The following are a few of the many cases upon this subject: *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Minnesota* v. *Barber*, 136 U. S. 313, 320; *Jacobson* v. *Massachusetts*, 197 U. S. 11, 28; *Lochner* v. *New York*, 198 U. S. 45, 57; *Chicago Railway Company* v. *Drainage Commissioners*, 200 U. S. 561, 593.

In passing upon questions of this character as to the validity and reasonableness of a discrimination or classification in relation to limitations as to height of buildings in a large city, the matter of locality assumes an important aspect. The particular circumstances prevailing at the place or in the State where the law is to become operative; whether the statute is really adapted, regard being had to all the different and material facts, to bring about the results desired from its passage; whether it is well calculated to promote the general and public welfare, are all matters which the state court is familiar with, but a like familiarity cannot be ascribed to this court, assum-

ing judicial notice may be taken of what is or ought to be generally known. For such reason this court, in cases of this kind, feels the greatest reluctance in interfering with the well-considered judgments of the courts of a State whose people are to be affected by the operation of the law. The highest court of the State in which statutes of the kind under consideration are passed is more familiar with the particular causes which led to their passage (although they may be of a public nature) and with the general situation surrounding the subject-matter of the legislation than this court can possibly be. We do not, of course, intend to say that under such circumstances the judgment of the state court upon the question will be regarded as conclusive, but simply that it is entitled to the very greatest respect, and will only be interfered with, in cases of this kind, where the decision is, in our judgment, plainly wrong. In this case the Supreme Judicial Court of the State holds the legislation valid, and that there is a fair reason for the discrimination between the height of buildings in the residential as compared with the commercial districts. That court has also held that regulations in regard to the height of buildings, and in regard to their mode of construction in cities, made by legislative enactments for the safety, comfort or convenience of the people and for the benefit of property owners generally, are valid. *Attorney-General* v. *Williams*, 174 Massachusetts, 476. We concur in that view, assuming, of course, that the height and conditions provided for can be plainly seen to be not unreasonable or inappropriate.

In relation to the discrimination or classification made between the commercial and the residential portion of the city, the state court holds in this case that there is reasonable ground therefor, in the very great value of the land and the demand for space in those parts of Boston where a greater number of buildings are used for the purposes of business or commercially than where the buildings are situated in the residential portion of the city, and where no such reasons exist for high buildings. While so deciding the court cited, with

approval, *Commonwealth* v. *Boston Advertising Company*, 188. Massachusetts, 348, which holds that the police power cannot be exercised for a merely æsthetic purpose. The court distinguishes between the two cases and sustains the present statutes. As to the condition adopted by the commission for permitting the erection, in either of the districts B, that is, the residential portion, of buildings of over eighty feet, but never more than one hundred, that the width on each and every public street on which the building stands shall be at least one-half its height, the court refuses to hold that such condition was entirely for æsthetic reasons. The Chief Justice said: "We conceive that the safety of adjoining buildings, in view of the risk of the falling of walls after a fire, may have entered into the purpose of the commissioners. We are of opinion that the statutes and orders of the commissioners are constitutional."

We are not prepared to hold that this limitation of eighty to one hundred feet, while in fact a discrimination or classification, is so unreasonable that it deprives the owner of the property of its profitable use without justification, and that he is therefore entitled under the Constitution to compensation for such invasion of his rights. The discrimination thus made is, as we think, reasonable, and is justified by the police power.

It might well be supposed that taller buildings in the commercial section of the city might be less dangerous in case of fire than in the residential portion. This court is not familiar with the actual facts, but it may be that in this limited commercial area the high buildings are generally of fireproof construction; that the fire engines are more numerous and much closer together than in the residential portion, and that an unlimited supply of salt water can be more readily introduced from the harbor into the pipes, and that few women or children are found there in the daytime and very few people sleep there at night. And there may in the residential part be more wooden buildings, the fire apparatus may be more widely scattered and so situated that it would be more difficult to obtain the necessary amount of water, as the residence quar-

ters are more remote from the water front, and that many women and children spend the day in that section, and the opinion is not strained that an undiscovered fire at night might cause great loss of life in a very high apartment house in that district. These are matters which it must be presumed were known by the legislature, and whether or not such were the facts was a question, among others, for the legislature to determine. They are asserted as facts in the brief of the counsel for the City of Boston. If they are, it would seem that ample justification is therein found for the passage of the statutes; and that the plaintiff in error is not entitled to compensation for the reasonable interference with his property rights by the statutes. That in addition to these sufficient facts, considerations of an æsthetic nature also entered into the reasons for their passage, would not invalidate them. Under these circumstances there is no unreasonable interference with the rights of property of the plaintiff in error, nor do the statutes deprive him of the equal protection of the laws. The reasons contained in the opinion of the state court are in our view sufficient to justify their enactment. The judgment is therefore

*Affirmed.*