Cortland A. Johnson, J.
The defendant appeals from a judgment of the District Court, sitting as a Court of Special Sessions, convicting him of a violation of article 17 of the Building Code of the Town of Hempstead, Nassau County, New York, which prohibits excavations for purposes other than construction of a wall, building or part thereof, farming or public use, and the removal of topsoil, sand, gravel, etc., without first having obtained a permit from the Building Inspector of the town and complying with the conditions and regulatory provisions prescribed in the ordinance.
The defendant attacks the validity of the ordinance upon constitutional grounds. He contends, first, that the Town Board of the Town of Hempstead was without statutory authority to enact such an ordinance.
Such statutory authority is to be found, if at all, in article 16 of the Town Law, which authorizes the Town Board to enact and enforce so-called “ zoning ordinances ” which regulate and restrict the location and use of buildings, structures and land in the town for trade, industry, residence or other purposes. In addition thereto, the Toato Board is specifically authorized to enact ordinances regulating the manner of removing materials from, filling up, draining, operating and using lands for sand or gravel pits, stone quarries, stripping of topsoil or other excavation purposes, and requiring the obtaining of a license or permit to conduct such operation or use, namely, excavation of sand, gravel, stone or other minerals and stripping of topsoil. (Town Law, § 130, subd. 21; § 136, subd. 12; both as added by L. 1941, ch. 674.)
The defendant claims, however, that these sections last cited may not be relied upon as conferring lawful authority to enact the ordinance with which we are here concerned because those provisions are, by their express terms, made applicable only to a toAvn in a county containing not more than three toAvns and adjoining a city having a population of one million or more and, therefore, applying, as the defendant claims, to the County of Nassau only, thus violating subdivision (b) of section 1 of article IX of the State Constitution prohibiting the passage of any law, local in its terms or in its effect or which relates specially to one county only, unless certain conditions therein prescribed are complied with. It has, however, been well settled by the decisions of our highest courts, over a long period of years, that a statute which is, by its terms, applicable to a class is a general rather than a local statute and does not cease to be general because extrinsic proof would show that it was, in *392 fact, local in its application. (People ex rel. New York Elec. Lines Co. v. Squire, 107 N. Y. 593; Matter of New York El. R. R. Co., 70 N. Y. 327; Matter of Church, 92 N. Y. 1; People v. Bunn, 157 N. Y. 528; Kittinger v. Buffalo Traction Co., 160 N. Y. 377.)
A more recent application of that well-settled principle is to he found in the case of City of New York v. Fifth Ave. Coach Co. (237 App. Div. 383, affd. 262 N. Y. 481). That case involved an amendment adding section 23 to the Transportation Corporations Law which permitted any corporation which had owned and operated a lawfully established stage route continually for five years last past in any city of the first class to extend its routes upon certain conditions. After a thorough discussion of all the authorities, the court reapplied the principle that that statute, being general in form, was not changed to a local act because the proof might demonstrate that it applied at that time only .to a restricted few or even to only one corporation. It would necessarily follow, therefore, that the fact that the statutes here involved, when enacted, happened to apply only to Nassau County would not make it a local law but would remain, on the contrary, a general one applicable to all towns then or thereafter within that classification.
Indeed, the act might be sustained even had it applied, by specific words, to the County of Nassau only. Such bills have been enacted over a long period of years relative to elections in certain designated counties, each such act referring usually to the particular county by name. Although this would seem, on its face, to violate section 17 of article III of the State Constitution, prohibiting the passage of a local bill providing for the election of supervisors, it was, nevertheless, held that an act so providing, as to the County of Nassau only, was valid and did not violate the Constitution. (People ex rel. Cotte v. Gilbert, 226 N. Y. 103.)
Returning, then, to a consideration of the provisions of the Town Law whereby the Town Board was empowered to enact an ordinance such as that here involved, we find that article 16 of that statute, empowering such board to enact zoning ordinances, limits the fine for the violation thereof to $50 (Town Law, § 268), which is in apparent conflict with section 135 of the Town Law authorizing or empowering the Town Board to fix the amount of fine to be imposed for violation of any of its ordinances. The Town Board fixed the maximum of $100 fine for violation of the ordinance here under consideration. Even if that ordinance be considered as enacted under the authority *393 of article 16 of the Town Law, and that violation of snch an ordinance can be punished by a fine not in excess of $50, that, nevertheless, does not result in invalidating the ordinance here involved because the fine actually imposed upon the defendant was $50 only and, hence, the provisions in that ordinance for punishment by fine are valid to the extent of a maximum fine of $50.
The defendant contends, further, that, under the zoning ordinance, he has a so-called “ non-conforming ” use because he had acquired the property and was operating it as a sand pit, digging down to considerable depths and screening and selling the sand therefrom, at the time the zoning ordinance was enacted. It is true that the zoning ordinance contains provision for the continuance of an existing use at the time the ordinance took effect, such use being denominated a ‘ ‘ non-conforming ’ ’ use. In other words, if the ordinance zoned particular territory as a residence zone, businesses actually being conducted within that zone at the time of the enactment of the ordinance were protected from destruction. Such a ‘ ‘ non-conforming ’ ’ use, however, is confined to the area in use at the time of the enactment of the ordinance and, if an extension of such use beyond the area so in use is desired, application must be made to the Board of Appeals under the ordinance to obtain either a variance or a permission for an extension under the conditions contained in the ordinance. I cannot accede to the argument that a person owning, for example, 100 acres of land, who is engaged in excavating sand therefrom as a business at the time of the enactment of the zoning ordinance placing his property in a residential zone, may, nevertheless, continue to extend the operation of that business to the entire 100 acres. To follow such argument to its logical extreme would result in making zoning almost, if not entirely, impossible. The operation for which the defendant has been here convicted was not for excavating in the area under excavation at the time of the enactment of the ordinance but, rather, for extending his excavation to an area not as yet excavated. Even under the zoning ordinance, therefore, he would be required to obtain approval of such extension by the Board of Appeals. Apart from such consideration, however, it may not be urged that a 1 ‘ nonconforming ” use constitutes such a vested right or interest that the municipality is powerless thereafter to regulate it. Surely, the defendant’s sand and gravel business, which, under the zoning ordinance, became a “ non-conforming ” use because in operation when the ordinance was enacted, is in no better posi *394 tion with regard to municipal regulation than would be a sand and gravel business in a business or industrial area where such an operation would be a conforming or permissible use under a zoning ordinance. In either case, the business or use continues subject to future regulation by the municipal authorities under the powers reposed in them by the statutes so long as such regulatory provisions are reasonable and within the police power. Hence, in the instant case, the defendant could not be permitted, under the zoning ordinance, to extend his 11 nonconforming ” use without obtaining the required approval or license (People ex rel. Ventres v. Walsh, 121 Misc. 494); and, irrespective of that, he, nevertheless, remained subject to reasonable regulation by the town of operations and uses such as those here involved by the Town Board of the town under the authority conveyed to it by the Town Law.
The question, therefore, reduces itself to that of reasonable regulation and whether the ordinance here involved constitutes such a reasonable regulation. The ordinance does not relate to all excavations but only to excavations for purposes other than the construction of a wall, a building, or a part thereof, or in farming or for public use. Before removing topsoil, sand, gravel, etc., in the course of such an excavation, the owner or lessee of the premises is required to file an application with the Building Inspector setting forth a statement and plan of the proposed excavation and seeking a permit therefor. As a condition of the issuance of the permit, the Town Board may require a surety company bond in a sum not less than $2,000. The fees fixed for the issuance of the permit are $10 where the area to be excavated does not exceed 5,000 square feet, and $25 where it does exceed 5,000 square feet plus an additional $1 for each additional 5,000 square feet. Certainly, none of those provisions may be said to be arbitrary or unreasonable. The other conditions attached are that no excavation may be made within 10 feet of any street line or unless adequate barricades are maintained and adequate provisions made for the prevention of flying dust. The condition most strongly attacked by the defendant as unreasonable is that requiring the excavation to be refilled with clean, nonburnable fill and graded up to the level of the abutting highway. There are other conditions in the ordinance relating to topsoil removal only, but those are not here involved. For that and other reasons, the decision in the case of Lizza S Sons v. Town of Hempstead (175 Misc. 383) is not here applicable. That ordinance was not a regulatory one applicable to excavations for the purposes set forth in the *395 present ordinance bnt was, rather, a prohibitory ordinance which absolutely prohibited the removal of topsoil from one place to another within the County of Nassau without obtaining a permit, subject to no regulatory conditions whatsoever, and, furthermore, absolutely prohibited, under all conditions, whether with or without a permit,* the removal of topsoil from the County of Nassau to any place outside the county. This provision, of course, was absolutely discriminatory and was the basis of the decision of the court holding the ordinance invalid.
In the case at bar, we are not confronted with any such ordinance. The ordinance here under consideration, insofar as it may now be attacked by the defendant, relates to the excavation and removal of sand and gravel and the method of operating and using lands for that purpose, and draining, cleaning or filling up the same. The fact that the defendant is operating what is ordinarily known as a sand pit or sand quarry is conceded. It consists of excavating to a depth of 40 feet or more and removing and selling the sand and gravel therefrom, leaving holes or excavations large in extent and considerable in depth, usually filled with water which does not drain away, thus presenting a condition subject to regulation for the public good, public health, public safety and general welfare.
Although it was the Town of Hempstead zoning ordinance and not the present ordinance under consideration in the case of People v. Calvar Corp. (286 N. Y. 419) nevertheless, the questions here involved were there considered at length by this court, whose decision was affirmed by the Court of Appeals. There, as here, the defendant contended that the ordinance was unconstitutional because it constituted a taking of the defendant’s property without compensation. Reliance was placed largely upon the decision of Mr. Justice Benedict in Bartsch v. Ragonetti (123 Misc. 903, affd. 214 App. Div. 799) or, rather, upon certain dicta given orally by Mr. Justice Benedict in the course of his opinion to the effect that the zoning laws were meant to apply rather to the construction and use of buildings than to the use of the land itself. This court then examined the statutes and found that since that decision, the statutes effective in the City of New York had been so amended that the Court of Appeals had held the zoning ordinance of the city to be applicable to the use of unimproved property as well as improved property (Matter of Monument Garage Corp. v. Levy, 149 Misc. 791, id., 266 N. Y. 339); and that, under section 261 of the Town Law the Legislature had specifically conferred upon the Town Board the power to enact a zoning ordinance which would *396 regulate and restrict not only the use of buildings but, also, the use of lands. The distinction thus pointed out by this court also disposed of the decision in People v. Linabury (209 N. Y. S. 126) which was clearly based upon the dictum of Mr. Justice Benedict in Bartsch v. Ragonetti (supra). The same distinction should here be made. This court, in its opinion in the People v. Calvar Corp. case (69 N. Y. S. 2d 272, 278-281), thereupon proceeded as follows:
‘ £ The only recent decisions which seem to be based in any way upon the dicta in Bartsch v. Bagonetti and People v. Linabury, supra, are the decisions in the so-called £ top soil case,’ Town of Harrison v. Sunny Ridge Builders, Inc., 169 Misc. 471, 7 N. Y. S. 2d 521; Id. 170 Misc. 161, 8 N. Y. S. 2d 632. Temporary injunction was denied upon several grounds, one being that the contemplated removal of top soil did not violate the zoning ordinance because no permanent business operation was contemplated. This was based upon the dictum of Mr. Justice Benedict in Bartsch v. Bagonetti which, as pointed out above, is erroneous. The permanent injunction was refused upon several grounds, one of which was that the contract to remove the top soil had been made before the enactment of the zoning ordinance and that there was, therefore, a vested property interest which would be violated if the ordinance were given retroactive effect. However, the Court also said that the ordinance was not a valid exercise of the police power insofar as it prohibited the removal of top soil by the owner from his premises. However, it was not there contended that the enforcement of the ordinance would promote public safety, health, morals or general welfare and that the removal of the top soil violated the aesthetic sense only. Whether that be true in the case of an ordinance absolutely prohibiting the removal of top soil, which it is not necessary here to decide, it would certainly not be true with respect to an ordinance prohibiting in residential areas the maintenance and operation of a sand and gravel pit as a business. The testimony and exhibits in the instant case show an extensive plot of considerable depth in one portion where it is filled with water, and an examination of the testimony and the exhibits is sufficient to show that there might very well be some effect upon the public health and the public safety as well as upon the general welfare which has been held to include the preservation and protection of property values. The sand pit here involved is completely analogous to the clay pit involved in the decision of Mr. Justice Hallinan in Post Brick Co., Inc., v. Thompson, 68 N. Y. S. 2d 159. There, as here, it was urged *397 that the zoning ordinance was arbitrary and based upon purely aesthetic considerations. The Court found, after examining the photographs, that the surrounding property suffered aesthetically as a result of the excavations, but also found that the deep excavations filled with water constituted hardships upon their face which amounted to public nuisances and that there were, necessarily, detrimental effects upon property values of neighboring properties. While it may be true that a restriction upon the use of one’s property may not be based upon aesthetic considerations only, it has, nevertheless, been held that such considerations may be taken into consideration where other elements of public health, safety or welfare are present. (Welch v. Swasey, 193 Mass. 364, 79 N. E. 745, 23 L. R. A., N. S., 1160, 118 Am. St. Rep. 523; Id., 214 U. S. 91, p. 108, 29 S. Ct. 567, 53 L. Ed. 923).
‘ ‘ Furthermore, it is well settled that there is a presumption of constitutionality which is applicable to an ordinance such as this and that the person who attacks the ordinance must demonstrate that its regulations are unconstitutional and that no permissible interpretation of all the facts would justify the adoption of such regulations as a reasonable exercise of the police power. Matter of Wulfsohn v. Burden, 241 N. Y. 288, 150 N. E. 120, 43 A. L. R. 651. As was there said, the police power is not limited to regulations designed to promote public health, public morals or public safety only, but permits dealing with conditions in such a way as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity.”
* * *
‘ ‘ It is, therefore, unnecessary to determine whether a statute or ordinance which absolutely prohibits one from excavating, mining or otherwise recovering and selling materials lying beneath the surface of his land, would be violative of the constitutional provisions prohibiting the taking of property without due process or just compensation.
“ In considering that question, it should be borne in mind that the earlier decisions, passing upon the validity of such a statute or ordinance standing by itself, are not necessarily controlling, in a case where the prohibition is part of, or results from, a general ‘ zoning ordinance.’
‘ ‘ Even in such earlier decisions an ordinance was held valid, although it absolutely prohibited certain businesses within certain areas.
*398 “ In Reinman v. Little Rock, 237 U. S. 171, 35 S. Ct. 511, 59 L. Ed. 900, the Court sustained the validity of an ordinance of the City of Little Rock which prohibited livery stables within a certain defined area of the city. The business was not a nuisance per se; nevertheless it was held to be within the police power to declare that in particular circumstances and in particular localities a livery stable shall be deemed a nuisance in fact and in law; the only limitation on that power being that the power could not be exercised arbitrarily or without unjust discrimination.
‘1 And in Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927, the Court sustained the validity of an ordinance of the City of Los Angeles prohibiting brick making within a designated area, although in that particular case the brickyard had been in operation for a long period of time, and the land contained valuable deposits of clay which could not be used except for brick making. It expressly refrained, however, from deciding whether an ordinance would be valid if it prohibited the removal of clay entirely, with the brickyard feature absent. In so doing, it referred to Ex parte Kelso, 147 Cal. 609, 82 P. 241, 2 L. R. A., N. S., 796, 109 Am. St. Rep. 178.
“ In that case was involved an ordinance of the City of San Francisco absolutely prohibiting the maintenance or operation of a stone quarry within certain designated limits of the city. As the Court held, such an ordinance absolutely deprived property owners within those limits of a valuable right, i.e., the right to extract rock and stone from their land and dispose of it. It was an absolute prohibition of removal, not a mere regulation of the method or manner of removal. Even such an absolute prohibition might be justified, if the removal could not be effected without improperly invading the rights of others; but the Court found that rock and stone could be removed in such a way as to inflict no recognizable injury. Consequently, it held the ordinance invalid, but, at the same time, pointed out that the operation might, under certain circumstances, cause such injury, and that, therefore, the state had power to impose regulations to prevent it, under the well recognized principles that a state, in the exercise of police power, may limit or regulate a use, for the protection of the legal rights of others; that such limitations or regulations are primarily a legislative concern with which the courts will not ordinarily interfere, if the regulations have some proper relation to the end sought to be accomplished, Le., ‘ the comfort, safety or welfare of society,’
*399 “ The same' distinction will be found in all the decisions holding prohibitory statutes or ordinances invalid.
11 Thus, for example, in Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. B. 1321, the ordinance prohibited coal mining where the right to mine the coal had been expressly reserved in the grant, thus destroying a property right, not in the public interest, but solely in the private interest of the owner of the surface of the land who had granted the mining rights.
‘1 And in Pacific Palisades Ass’n v. City of Huntington Beach, 196 Cal. 211, 237 P. 538, 40 A. L. B. p. 782, the ordinance was arbitrary and unreasonable because it prohibited an owner from operating an oil well on its property, while in other districts of the city, more thickly populated, densely settled and devoted to residence purposes, such operations were permitted. There, again, the Court recognized the state’s right to limit and regulate, however, to protect others from injury, so long as the limitations or regulations imposed are not arbitrary, and are ■reasonably related to the health, safety, morals or general welfare of the community. For other decisions to the same effect, see 40 A. L. B. annotation beginning p. 788.”
In its affirmance, the Court of Appeals (People v. Calvar Corp. (286 N. Y. 419, 421) specifically refrained from determining whether an ordinance absolutely prohibiting the removal of sand and gravel would be valid, saying:
‘ ‘ The defendants ’ property is situated in an undeveloped section of the town. Excavation of sand from the property and the erection of temporary buildings, for use in connection with such excavation, would, so far as appears, not cause any serious present substantial injury to the neighborhood, [and] Forceful argument may be made that a general and complete prohibition of such use of property, even where such use might be permitted without causing substantial injury to the community, would be unreasonable. That question must await determination until it arises. We express no opinion upon it In this case there has been no such complete and absolute prohibition.”
Thus, the question is still open whether an ordinance containing an absolute prohibition of removal of sand or gravel would be valid. From the words of the Court of Appeals, it is quite apparent that validity would be determined largely by the circumstances existing in the particular community to which the ordinance was applicable. In some communities, the public health, public safety and general public welfare might require *400 an absolute prohibition while, in others, the use could be permitted subject to reasonable regulations which would protect the public health, safety and welfare.
Thus, an ordinance absolutely prohibiting the excavation of clay from one’s own property in a high class residential community in the Town of Oyster Bay, Nassau County, New York, was sustained on the ground of proper exercise of the police power for public health and safety and .for the general welfare including the preservation of property values and aesthetic considerations. Hallinan, J., in Post Brick Co. v. Thompson (68 N. Y. S. 2d 159, supra) citing Bacon v. Walker (204 U. S. 311).
The defendant here contends that the ordinance, although purporting to be regulatory, is, in fact, prohibitory because of the requirement that the excavations be refilled. I cannot agree with that contention. It may, indeed, make the defendant’s operation more expensive and decrease his profits. That, however, is not a valid answer if, in fact, the regulation enacted under the police power is actually for the benefit of the public health, public safety and general welfare, is not arbitrary of discriminatory and has some proper relation to the end sought to be accomplished, namely, the “comfort, safety or welfare of society.”
In determining whether an ordinance is a reasonable regulation under the police power, the court is not confined to the question solely of public health and public safety. The power is much broader and extends generally to the promotion of the public good and to so dealing with existing conditions as to bring out of them the greatest welfare of the People by promoting general prosperity. Obviously, in so doing, the general public welfare is superior in importance to the pecuniary profits of the individual; and the preservation of property values, and even aesthetic considerations, may be weighed in arriving at the determination of the reasonableness of the regulation. (Matter of Wulfsohn v. Burden, 241 N. Y. 288; Welch v. Swasey, 193 Mass. 364; id., 214 U. S. 91; Village of Euclid v. Ambler Co., 272 U. S. 365; Bacon v. Walker, supra; Post Brick Co. v. Thompson, supra.)
In considering the ordinance here involved, all the matters above referred to are of weight in determining its validity. Surely, preservation of property values and aesthetic considerations are involved in this case, perhaps even more than in the case of the clay pit in the Post Brick Co. case (supra). The latter was situate in a completely residential village, known as the Village of Old Brookville, in the Town of Oyster Bay in this *401 county. The former, that is, the sand pits here involved, are situate at Elmont, in the Town of Hempstead, a closely settled section not far distant from the Few York City line, surrounded, apparently, by residential developments. Furthermore, it is apparent that the considerations of public health and public safety are necessarily involved where, in such a community, extensive excavations of great depth are left unfilled except with water, constituting hazards to health and safety removable only by drainage or refill. It cannot, therefore, be said that the conditions of the ordinance, and, particularly, those requiring refill, bear no reasonable relation to the ends and purposes sought by the enactment of the ordinance.
Reference to the authorities supports this conclusion. A similar situation existed, years ago, in the City of Rochester, in connection with stone quarries where excavations had been made and were left unfilled so that the quarries became partially filled with water. (City of Rochester v. Simpson, 134 N. Y. 414.) The Court of Appeals there sustained an ordinance enacted by the city under power granted by the Legislature to enact ordinances requiring the draining or filling up of such excavations. A most recent decision upon an ordinance very similar to that here involved is People v. Sessano (176 Misc. 723). The ordinance there involved was that section of the Administrative Code of the City of Few York applicable to excavations other than for construction purposes. It related, as does the ordinance in the instant case, to excavations made for the purpose of removing soil, earth, sand and gravel. It provided that such excavations should not be commenced until a permit therefor had been obtained from the Building Superintendent upon an application showing the location, area and depth of the proposed excavation and requiring a showing that the land was free from any unpaid taxes, assessments and water rates and requiring the consent of the mortgagee if the property were subject to a mortgage. The conditions under which a permit could be issued are very similar to those in the ordinance of the Town of Hempstead. It prohibited excavation to a depth greater than 10 feet below street grade unless the side walls of the excavation should be maintained at an incline of not less than 45 degrees or supported by piling or other retaining equipment as required in building excavations. It further required that the excavation be properly drained so long as it remained and, if it should become unsafe or dangerous, it was required to be filled in by order of the Superintendent with clean ashes, sand or earth. The premises there involved were located in *402 Queens County, on the outskirts of St. Albans, a section with a sparse population, and consisted of a vacant vegetable farm. The owner sought a permit to remove and sell the topsoil, which was denied, and, instead of seeking a mandamus requiring issuance of the permit, proceeded with the removal and was convicted for a violation of the ordinance. The court distinguished the cases above referred to, which this court distinguished in its opinion in the Calvar case {supra), and sustained the validity of the ordinance and the conviction of the defendant thereunder. In so doing, it applied the principle that the validity of such an ordinance would necessarily depend upon the territory to which it was applicable and that such an ordinance applicable to a community such as the City of New York was surely a reasonable regulation. That decision is particularly applicable to the case at bar where the defendant’s premises are situate in a similar community as that there involved and at not great distance from the dividing line between Nassau and Queens Counties.
There remains to consider only the contention of the defendant that the ordinance reposes arbitrary power in the Town Board and the Building Inspector or both. This contention may not be sustained. If either the board or the Inspector arbitrarily or unreasonably refuses a permit, their or his action is subject to review under article 78 of the Civil Practice Act. A defendant confronted with such a situation should seek legal relief either by mandamus or by review. He may not disregard the ordinance and proceed without the required permit. (People v. Sessano, supra; People v. Ludwig, 262 App. Div. 912.)
In summary:
• The statutes empowering the Town Board to enact ordinances regulating the use of lands within the town and the excavation and removal therefrom of sand, gravel and other materials are valid and constitutional.
The ordinance enacted by the Town Board by virtue of that power regulates, and does not prohibit, such excavation and removal.
The regulatory provisions of the ordinance are reasonable, and bear a reasonable relation to the ends and purposes sought to be attained, namely, maintenance of the public health and safety, preservation of property values and enhancement of the general public prosperity and welfare.
The ordinance is not retroactive in terms or in effect. It does not take away from the defendant the “ non-conforming ” use permitted him by the zoning ordinance, but regulates the exten *403 sion of that use beyond the area so used when the zoning ordinance was enacted.
The ordinance does not place arbitrary power in the hands of the Town Board and Building Inspector. If refusal of a permit be arbitrary, unreasonable or capricious, its issuance may be obtained by legal action.
Judgment of conviction affirmed.