[L.A. No. 32032. July 10, 1986.]

HALACO ENGINEERING COMPANY, Plaintiff and Appellant, v.
SOUTH CENTRAL COAST REGIONAL COMMISSION et al.,
Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Peter H. Kaufman, Deputy Attorney General, for Defendants and Appellants.

Mitchell, Silberberg & Knupp, Arthur Fine and Michael Quesnel for Plaintiff and Appellant.

**OPINION**

**GRODIN, J.**—In this administrative mandamus proceeding (Code Civ. Proc., § 1094.5) we review a judgment granting a peremptory writ of mandate.[1] The writ commands the California Coastal Commission (Commission) and the South Central Coast Regional Commission (Regional Commission)[2] to confirm a vested right in the Halaco Engineering Company

---

[1]Inasmuch as a hearing was granted prior to May 6, 1985, the operative date of article VI, section 12 of the California Constitution as amended in the November 6, 1984, General Election, this matter is an appeal which is before this court for all purposes, and is not before the court on review of the Court of Appeal opinion affirming the judgment. (Cal. Rules of Court, rule 29.9(c).)

[2]The Regional Commission terminated and the Commission succeeded to all of its former authority and duties as of July 1, 1981. (Pub. Resources Code, § 30305.)

All references to code sections are to the Public Resources Code unless otherwise indicated.

(Halaco) to continue the use of a settling pond and waste disposal site on its property which is adjacent to the sand dunes of Ormand Beach in Ventura County, without obtaining a permit to do so from the Regional Commission. The property is located within the City of Oxnard and the coastal zone.[3]

The Commission and the Regional Commission appeal,[4] contending that the trial court erred both in utilizing its independent judgment in reviewing the Regional Commission's decision that Halaco did not have a vested right to continue its operations, and in finding that Halaco did have that right. Halaco argues that its claim to a vested right to continue its operations is one arising under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 19, of the California Constitution. On that basis it asserts an exemption from the controls placed on coastal zone development by the Coastal Act, and argues that the trial court properly exercised its independent judgment on the administrative record in upholding its claim. Halaco also appeals from the affirmance of the decision that a propane gas tank it has placed on its property is a "development" within the meaning of and subject to the permit requirement of the Coastal Act, and from the denial of attorney fees.

We shall conclude that application by the trial court of the independent judgment standard of review is proper when a developer seeks review of a Commission decision denying a vested rights claim. We shall also conclude that substantial evidence supported the trial court's determination that the decision of the Regional Commission was not supported by substantial evidence, and that the weight of the evidence supported Halaco's claim of vested right to the continued use of its settling pond and waste disposal site. Finally, we also affirm the trial court's judgment holding that placement

---

[3]Pursuant to the California Coastal Act of 1976 (§ 30000 et seq.) (the Coastal Act), the coastal zone "is that land and water area of the State of California from the Oregon border to the border of the Republic of Mexico . . . extending seaward to the state's outer limit of jurisdiction, including all offshore islands, and extending inland generally 1,000 yards from the mean high tide line of the sea. In significant coastal estuarine, habitat, and recreational areas it extends inland to the first major ridgeline paralleling the sea or five miles from the mean high tide line of the sea, whichever is less, and in developed urban areas the zone generally extends inland less than 1,000 yards. . . ." (§ 30103, subd. (a).)

The Halaco site is described as "wetlands" by the Regional Commission in apparent reliance on a Department of Fish and Game memorandum. The Regional Commission made no finding on that question, however, and its ruling was not made on that basis. Halaco disputes the characterization and the United States Army Corps of Engineers has acknowledged that the site does not come within its jurisdiction over dredging and filling of wetlands.

[4]Inasmuch as the Regional Commission has terminated, and the Commission has succeeded to its duties and authority, we shall refer hereafter to arguments made by these appellants as arguments of the Commission.

of the propane tank on its property is a development for which a permit is required.

## I.

Halaco operates a nonferrous scrap metal recycling plant for which it obtains scrap, principally aluminum and magnesium, from other users and smelters. It converts the scrap into ingots of metal alloys. Because the scrap is often contaminated with dirt and other impurities when received by Halaco, it must be washed prior to smelting. The water and fluxing salts, and the impurities removed in the water washer, are pumped into a settling pond where evaporation of the water leaves a powdery residue of particulates. The settling pond is contained within a berm whose trapezoidal walls were created with dirt taken from the bottom of the pond and later enlarged by depositing on them the material dredged periodically from the pond.

The Halaco plant itself consists of several foundry buildings and other structures located on a 12-acre parcel of land in southwest Oxnard to the immediate west of the Oxnard Industrial Drain. This drain, which runs in a north-south direction, separates the factory from the 28-acre parcel on the eastern side of the drain on which the settling pond is located. The remainder of the eastern parcel is used for disposal of the material dredged from the pond. The pond which occupies approximately 15 acres of this parcel is bounded on 3 sides by the drain and Halaco's property line. With the completion of the berm surrounding the pond, Halaco commenced use of the remaining 13 acres for the deposit of the dredged material, doing so by extending the northern berm toward the northern boundary of the property.

The Halaco plant was constructed on the eastern parcel over the period between 1965 and 1973. Actual operation of the plant and use of the settling pond began in 1970. The pond and waste disposal area have been used for these purposes continuously since 1970. Prior to construction of its Oxnard facility Halaco had operated a smelting plant in Gardena, California. It moved its operations to Oxnard for several reasons, all of which were directly related to the coastal site where temperatures would be lowered naturally, there was no danger of polluting potable water, and disposal of the waste in the manner described would be lawful. The elevation of the plant is higher than that of the eastern parcel because the plant is on the site of the former Oxnard city dump. There had been unpermitted dumping on the eastern parcel. When Halaco obtained its building permits for construction

of the buildings on the western parcel, the site was zoned M-2, in which heavy industrial uses were permitted.

Halaco did not apply for a permit to continue its use of the settling pond and waste disposal area, or any of its operations, following the adoption in 1972 of the California Coastal Zone Conservation Act (former § 27000 et seq.) the predecessor to the present Coastal Act. It believed that no permit was necessary since it had been operating its facility prior to the effective date of the act. When this court held in *South Coast Regional Com.* v. *Gordon* (1977) 18 Cal.3d 832 [135 Cal.Rptr. 781, 558 P.2d 867], that a vested right claim may not be asserted in defense to an action by a regional commission unless the defendant has previously submitted a vested rights claim to the commission, Halaco submitted an application for approval of a claim of vested rights to the Regional Commission pursuant to title 14, California Administrative Code section 13201 on July 26, 1978. No action by the Regional Commission, the City of Oxnard, or any other agency had been taken at that time to subject Halaco to the permit requirements of the Coastal Act. In its application Halaco claimed a vested right and exemption from the permit requirements of the Coastal Act for its entire operation.

The principal and dispositive factual question regarding the eastern parcel, as seen by both Halaco and the Regional Commission, was whether Halaco had all permits required by the City of Oxnard for the construction and use of the settling pond including the deposit of solid material dredged from the pond on the remainder of the waste disposal site in the manner in which these operations were being conducted when the permit application was made. Halaco contended, and presented uncontradicted evidence, that the structures on the western parcel had been built pursuant to permits properly issued by the City of Oxnard, that the city was aware of the contemplated use of the eastern parcel for a settling pond and waste disposal site, and that the city with knowledge of the full scope of the intended use of the pond and disposal site had advised Halaco that no further permits were required for the construction of the settling pond. Halaco had obtained special use permits for its operation of the foundry and smelters, but did not have a grading permit for construction of the settling pond or removal of the settled deposits.

The Regional Commission considered the various components of Halaco's operations separately. The settling pond and waste disposal site were considered apart from the structures comprising the plant on the western parcel, as was the 18,000-gallon propane tank that Halaco had placed on the western parcel without a permit from the Regional Commission after the Coastal Act had gone into effect. After a hearing on September 28, 1979, the

Regional Commission voted to uphold the vested right claims as to all of the components of the application except the use of the settling pond and waste disposal site, and the propane tank. In voting to reject the claimed right to use the settling pond in the manner for which it had been constructed, the Regional Commission also voted to reject the claimed right to deposit the material dredged from the pond on the remainder of the eastern parcel.

The Regional Commission denied Halaco's claim of vested rights with respect to the eastern parcel for deposit of material outside the settling pond, expansion of the settling pond either by raising the width of the banks (berms) by outward expansion or by increasing their height, or by any activity that would cause the pond to exceed the dimensions shown on a 1969 blueprint not-to-scale sketch which Halaco had supplied to the City of Oxnard in that year when it inquired, prior to creating the settling pond, whether any additional permits would be necessary. The Regional Commission reasoned that "as a vested right cannot exist for that which is not specifically defined, there can be no finding of vested right beyond those plans (1969)." Halaco appealed to the Commission which declined to hear the matter, ruling that it did not raise a "substantial issue."[5]

Contending that the finding of the Regional Commission was without evidentiary support, and was contrary to the uncontradicted evidence, Halaco petitioned for writ of mandate (Code Civ. Proc., § 1094.5) and urged the trial court to apply the independent judgment standard of review mandated by this court in *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242]. It also contended that its propane tank was not subject to the jurisdiction of the Regional Commission because moving it onto the property did not involve the placement of solid material in the coastal zone.

After consideration of the administrative record the trial court found that Halaco had been operating its plant at all times since 1970, that the plant included the settling pond and waste disposal site "through the operation of which it disposes of its solid waste. The solid waste suspended in water is pumped into the pond, settles to the bottom of the pond, and is dredged out and is principally deposited on the northern berm of the pond expanding that berm onto Halaco's waste disposal site north of the pond."

In its conclusions of law[6] the court held that "since the instant action involves a claim of vested rights, the Court must exercise its independent

---

[5]The Commission was obliged to hear an appeal from a decision of a regional commission unless it determines, inter alia, "that no substantial issue exists as to conformity with Chapter 3 (commencing with Section 30200)." (§ 30625, subd. (b)(1).)

[6]The court provided that any conclusion of fact that properly should be a conclusion of law, should be deemed a conclusion of law.

judgment in determining whether or not findings are supported by the weight of the evidence." It then found that the preponderance of the evidence established that Halaco had intended to use the settling pond and waste disposal site in the manner in which it had been used continuously since 1970; that the use was fully explained, understood, and considered by the city in the city's determination that no permits for that use were required; that there was no evidence to support a determination that this decision was based solely on the 1969 sketch or that the city had determined only that no permit was needed for the construction of the pond in the dimensions shown in the sketch as contrasted with the actual use of the pond.

The trial court also ruled that the administrative record failed to reflect that proposed revised findings on which the Regional Commission sought to uphold its decision had been adopted by the Regional Commission or served on and delivered to Halaco, and that the proposed findings related to the settling pond were both contrary to the determination made by the Regional Commission after the September 28, 1979, hearing and unsupported by the evidence. Accordingly, they were arbitrary and capricious.

The court also held that the settling pond had been constructed in good faith and in conformance with the law and so used since 1970 in conjunction with the waste disposal site. The use had been consistent with the claim of vested rights which had not been waived. The court held that in determining that Halaco had a vested right to its settling pond and waste disposal site at all, the Regional Commission had necessarily rejected arguments that: (1) Halaco had been required to but had not obtained a grading permit, special use permit, and variance; (2) a permit was a prerequisite to obtaining a vested right to use the pond and disposal site in the manner in which it had been used; and (3) Halaco's rights depended upon an estoppel. Reasoning that because the Regional Commission had not adopted any of those grounds, and had not made a finding that an estoppel existed as to the City of Oxnard but did not extend to the Regional Commission, the trial court concluded that it could not consider any of those grounds as support for the Regional Commission's decision because its review was limited to the grounds actually invoked by the Regional Commission for its decision.

Finally, the court held that Halaco had demonstrated by a preponderance of the evidence that the Regional Commission should have, and did, grant its application for approval of the claim of vested rights to continue its use of the settling pond and waste disposal site, but the evidence showed and as a matter of law the propane tank constituted the placement or erection of solid material in the coastal zone and was subject to the permit requirement of the Coastal Act.

These appeals followed.

## II.

At the time these administrative proceedings commenced, section 30601 required that a coastal development permit be obtained from a regional commission for any development in the area in which the Halaco plant is located.[7] "Development" as defined by section 30106 included "the placement or erection of any solid material or structure; . . . disposal of any dredged material . . .; [and] grading . . ." on the property. Section 30608 exempted from the permit requirement any development for which a "vested right" had been acquired: "No person who has obtained a vested right in a development prior to the effective date of this division or who has obtained a permit from the California Coastal Zone Conservation Commission pursuant to the California Coastal Zone Conservation Act of 1972 (commencing with section 27000) shall be required to secure approval for the development pursuant to this division; provided, however, that no substantial change may be made in any such development without prior approval having been obtained under this division." If a development was not exempt under that section, a permit issued pursuant to section 30601 was "subject to reasonable terms and conditions in order to ensure that such development or action [would] be in accordance with the provisions of" the Coastal Act. (§ 30607.)

Because the Coastal Act had been preceded by the Coastal Zone Conservation Act, an initiative measure adopted in 1972, which also required coastal zone development permits for any development for which a vested right had not been acquired when that act became effective (former §§ 27401 & 27404), a developer such as Halaco which had not obtained a permit under the 1972 act could claim a vested right only if that right had been perfected under the exemption provisions of the 1972 act. The development would not otherwise be "lawful," and thus the developer could not claim a vested right to continue.

---

[7]Section 30601 then provided in pertinent part: "Prior to certification of the local coastal program and, where applicable, in addition to a permit from local government pursuant to subdivision (b) of section 30600, a coastal development permit shall be obtained from the regional commission . . . for any of the following: [¶] "(1) Developments between the sea and the first public road paralleling the sea or within 300 feet of the inland extent of any beach or of the mean high tide line of the sea where there is no beach, whichever is the greater distance.

"(2) Developments not included within paragraph (1) located on tidelands, submerged lands, public trust lands, within 100 feet of any wetland, estuary, stream, or within 300 feet of the top of the seaward face of any coastal bluff.

"(3) . . . . . . . . . . . . . . . . . . . . ."

Construing together former sections 27400[8] and 27404[9] in *San Diego Coast Regional Com.* v. *See The Sea, Limited* (1973) 9 Cal.3d 888 [109 Cal.Rptr. 377, 513 P.2d 129], we concluded that persons who had performed substantial lawful construction of their projects prior to February 1, 1973, were exempt from the permit requirements of the 1972 act. (9 Cal.3d at p. 890. See also, *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 799 [132 Cal.Rptr. 386, 553 P.2d 546].)

■ A developer who claims exemption from the permit requirement of the act on grounds that he has a vested right to continue his development is required to seek confirmation of his vested right claim by a regional commission and may not first assert the claim in defense to an action by the regional commission to enjoin further development. (*South Coast Regional Com.* v. *Gordon, supra,* 18 Cal.3d 832; *State of California* v. *Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281] (hereinafter *Veta*).) As we explained in *Gordon* and *Veta,* the constitutional underpinnings of the vested right doctrine do not preclude delegation to the regional commission of the power to make the initial determination whether an exemption should be recognized as long as judicial review of that decision is afforded. ■ We have not, however, examined the question presented here—the standard of judicial review to be applied by the trial court when review of a decision denying a vested right claim is sought.

In several decisions the Court of Appeal has concluded that the independent judgment standard of review required by *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29], must be applied by a superior court reviewing the denial of a vested right claim. (See, e.g., *Stanson* v. *San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38 [161 Cal.Rptr. 392]; *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835 [116 Cal.Rptr. 487].) ■ ■ In each case the Court of Appeal has reached this conclusion through reasoning that the vested rights doctrine derives from the constitutional guarantee that property may not be taken without due process and just compensation, and that it therefore follows that the denial by the

---

[8]Former section 27400: "On or after February 1, 1973, any person wishing to perform any development within the permit area shall obtain a permit authorizing such development from the regional commission and, if required by law, from any city, county, state, regional or local agency."

[9]Former section 27404: "If, prior to November 8, 1972, any city or county has issued a building permit, no person who has obtained a vested right thereunder shall be required to secure a permit from the regional commission; . . . Any such person shall be deemed to have such vested rights if, prior to November 8, 1972, he has in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor."

Regional Commission of a claim of vested right made under the Coastal Act affects a fundamental property right.[10]

The Commission questions the premise underlying these decisions, noting that the denial of a vested rights claim does not directly affect the right of the developer to proceed with his project. The impact of the decision is to subject the developer to a further administrative proceeding—the permit process. The Commission concedes that if a developer has acquired a vested right under the Coastal Act to proceed without a Commission permit, the Commission has no authority to impose additional conditions on the development. It is argued, however, that determination of a claim of vested right involves only the question of whether the developer has satisfied the statutory criteria for recognition of a vested right. Resolution of that question adversely to the claimant affects a constitutionally rooted vested right only if due process either precludes imposing on the claimant the burden of the permit process or the imposition of any new conditions on the right of the claimant to proceed with the development of his property. In the view of the Commission, therefore, the question of whether an action of the Commission will have a substantial effect on a fundamental, vested, property right can only be determined once the Commission takes action on the permit application.

We agree with the Commission that denial of a vested right claim, in the context of the Coastal Act, does not directly affect a fundamental right of the claimant. The burden of compliance with the permit requirement is insubstantial, and the Commission might, after all, grant the permit or impose conditions which are not sufficiently onerous to constitute a taking or otherwise offend principles of due process. It does not follow, however, that the trial court erred in using its independent judgment on the evidence taken in the proceedings related to Halaco's application for recognition of its claimed vested right. ▇ The statutory scheme under which vested rights claims and permit applications are considered by the Commission, and Commission decisions are reviewed by the court satisfies us that the Legislature contemplated (a) that any claim of vested rights would be finally

---

[10]The applicable rule of judicial review of adjudicatory decisions of administrative agencies of statutory origin was stated by this court in *Strumsky v. San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 32: "If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record."

resolved before an application for a permit is required, and (b) that judicial review would be on the basis of an independent judgment standard.

Section 30801 authorizes review of Commission decisions only by petition filed within 60 days after the decision to be reviewed has become final. Halaco has followed this procedure. If, as the Commission contends, Halaco's judicial challenge to the denial of its vested rights claim were to be tested on the basis of a substantial evidence standard, and on that basis denied, the matter would then go to the Commission for action on a permit application. If the Commission were to grant the permit without qualifications, or impose qualifications which Halaco did not challenge, that would be the end of the matter. But if the Commission were to deny the permit or impose conditions which Halaco challenged as unduly burdensome upon a vested right, Halaco would then be required to challenge the Commission decision on its permit application by a second petition in the superior court. Inasmuch as the vested rights claim would then be squarely presented, Halaco would be entitled to review by a court exercising its independent judgment on the evidence. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 141-143.) The Commission apparently assumes that such review would be available to Halaco at this stage.

It is highly unlikely that the Legislature intended a two-step procedure with different standards of review. Not only would this be cumbersome, but it would require departure from the procedures under which judicial review is undertaken pursuant to Code of Civil Procedure section 1094.5. Most significantly, the court which had determined that the decision of the Commission was supported by substantial evidence would be called upon, months or years later, to exercise its independent judgment on the basis of the same record in order to determine whether the Commission's permit decision should be upheld. It is improbable that the Legislature contemplated that the Commission would go through a possibly futile permit application proceeding, or that the superior court would be required to entertain repetitive petitions asserting the vested rights claim in order to assure a claimant such as Halaco its right to review under the court's independent judgment on the evidence.[11]

---

[11]Normally, of course, the record of the prior administrative proceeding would not be a part of the administrative record of the permit application proceedings. Subdivision (e) of Code of Civil Procedure section 1094.5 permits consideration of evidence outside the administrative record but only if it is relevant to the agency's action in that proceeding, and only on a finding by the court that the evidence could not have been produced or was improperly excluded in the administrative proceeding. Inasmuch as the Commission decision on the vested rights claim would be final at the time the permit application was considered by the Commission, the evidence would not be admitted and the issue relitigated in the permit application proceeding. Only if the superior court authorized the filing of an administrative record of both proceedings would the opportunity for reconsideration of the vested rights decision under the independent judgment standard of review be available.

We cannot attribute such an intent to the Legislature which incorporated the provisions of Code of Civil Procedure section 1094.5 into section 30801. The former provides that where the reviewing court "is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).) The Legislature has thereby indicated an intent that there be a proceeding to review a Commission adjudicatory proceeding at which the independent judgment standard of review will be available. There is no suggestion in the Coastal Act that the Legislature contemplated repetitive proceedings to review the denial of a vested rights determination under different standards of judicial review.

Therefore, while accepting the Commission's argument that a landowner or developer such as Halaco, which is operating an industrial plant may not claim a vested right to obtain a land use permit, or to be free of valid newly enacted land use regulations (see *United States* v. *Riverside Bayview Homes* (1985) 474 U.S. 121, — [88 L.Ed.2d 419, 426, 106 S.Ct. 455, 459]; *American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 607 [186 Cal.Rptr. 345, 651 P.2d 1151]) we find that argument irrelevant in the context of this statutory scheme. Having provided a procedure whereby a developer may obtain a determination of a claim to a vested right to proceed with a development for which he has all required permits and in which he has invested substantial work and funds, and having provided that if a claim of vested right is confirmed the developer need not apply for a permit, the Legislature did not intend to postpone final judicial review of the vested rights claim until after application for a permit was made and acted upon.[12]

### III.

Halaco's vested right claim was received by the Regional Commission on July 26, 1978, and filed the following day. Halaco claimed exemption

---

[12]Halaco's claim was based both on a vested right under the statutory provision (§ 30608) and under constitutional due process principles. We do not believe the result should differ, however, if a claimant does not expressly assert a constitutional basis for his claim. The statutory exemption encompasses projects in which developers may claim a constitutionally rooted vested right to be free of further conditions or restrictions. The statutory scheme for review of vested rights and permit application claims suggests no such distinction. Inasmuch as the denial of any vested rights claim and imposition of the permit requirement may potentially have a substantial affect on a developer's fundamental property rights, the review which the Legislature apparently contemplated would be accorded the action on the vested rights claim is that of the independent judgment standard.

from the permit requirements of the act for the operation of its business as a smelter of nonferrous metals, and described the "development" involved as an "integrated whole" for the conduct of that business. The process of smelting and producing of ingots was described as was the preparation of the scrap by removal of the dirt or "dross" from the metal: "As to the dross, prior to the smelting process, the dirt is separated from the scrap by a water washer. The dirt and the water used in the separation is pumped into the settling pond." The dredging operation was also described: "Use of the settling pond was commenced by construction of the perimeter berms in 1970. Thereafter there has been periodic dredging of the fill material from the pond, which fill material is placed immediately adjacent to the existing berm."

Submitted with the claim were copies of the permits under which structures had been built on the Halaco property. A letter to the Regional Commission from a planning associate in the Oxnard Planning Department listed special use permits granted to Halaco for its operation, including an August 1965 permit for a magnesium smeltering plant facility, a May 1969 extension of the permit to include a foundry-furnace building, and an April 1972 amendment of the permit to add a foundry building and welding shop. The letter noted that there had been no application for nor permit approved for the "retention basin."

In support of its claim that its vested right extended not only to the operation of the foundry and smelters, but also to the entire integrated process of creating the ingots of metal alloys including the water washing process, use of the settling pond, and disposal of dredged material on the eastern parcel, Halaco submitted declarations from persons involved in the location and construction of the plant, and correspondence with and from city officials who had participated in the events leading to the 1970 commencement of operation. These documents included:

1. Declarations of Leslie Fine, who had been in 1965 and at the date of the hearing continued to be a director, vice president, and general manager of Halaco. Fine stated in substance that the undeveloped, contiguous waste disposal site had been one of the factors leading to the relocation of the Halaco operation to the Oxnard site, and Halaco had at all times intended to use the entire eastern parcel as a solid waste disposal site. This intent had been made clear to Oxnard officials at various times since the relocation planning commenced.

2. A copy of a June 24, 1965, letter from the Oxnard "coordinator" to a representative of the then owner of the Halaco site stating that the firm

would like to move from Gardena to the Oxnard area if a suitable site could be found. The letter describes the Halaco operation and the need for a waste disposal site.[13]

3. A July 1965 letter from Halaco to the coordinator reviewing conversations regarding Halaco's acquisition of a site and construction of a plant in Oxnard, in which the disposal of solid waste on the berm, and widening of the berm were described.[14] That letter also noted that if the agreement were reached Halaco would be granted a special use permit and business license to operate the proposed plant, that the area would not be rezoned, but would be kept for heavy industrial use.

4. Declarations by Steven Thurston, the Oxnard City Engineer from October 1959 through March 1977, the first stating that in 1969 the building department had referred to him an inquiry by Halaco which had then obtained special use permits for the construction of its magnesium smelting plant and foundry building. Halaco had inquired whether any additional permits were needed for its intended development of a settling pond or ponds. With the inquiry Halaco had enclosed a blueprint sketch, not drawn to scale, of the proposed settling pond(s).[15] The building department, to which the inquiry had been directed, had determined that all necessary building permits had been obtained, and because that was the extent of its concern had referred the matter to the city engineer. Thurston then had several conversations with Fine, Halaco's vice president and general manager, regarding the need for additional permits during which Thurston learned or already

---

[13]"Halaco is a magnesium smelting firm, their [sic] principal product being the magnesium ingots for use in aircraft and missile work. The manufacturing process creates two problems, one, a discharge from the plant of fumes containing a small percentage of acids. Formerly homes located 700 feet from the plant were not bothered, but new homes at 100 feet are complaining of this odor. *The second problem involves the disposal of a 'slag' residue, largely soluable, which is now being dumped into the ocean.* [¶] . . . the owners of this firm favor property near the ocean . . . now owned by the Edison Company. This location would avoid any possible annoyance to others and would be near a source of cooling water. *There would also be possible use of lower portions of the property for deposit of the slag residue.*" (Letter dated June 24, 1965, from Thomas A. Esling, coordinator, to W. K. Dunkle, division manager, western division, Southern California Edison Company, Oxnard, California.) (Italics added.)

[14]"We would be permitted to dump our solid industrial waste, consisting mainly of the fine, powdery material that settles in the bottom of the sample, along the rubble berm, provided that we do not increase the height of the pile to any appreciable extent. We can mostly fill in void areas and widen the berm."

[15]In his testimony Leslie Fine explained that the 1969 blueprint sketch of the proposed settling pond depicted not three but a single pond with barriers dividing the pond into sections. It was then believed that the discharge might be drained from one section to another over the dividing walls, but this has not proved necessary and the interior walls had never been constructed.

knew that Halaco intended to dispose of effluent into the ponds. Thurston declared: "As part of my considering whether any additional permits were required by Halaco, I specifically considered whether Halaco needed a permit for those settling ponds. It was my opinion that the construction and use of those ponds by Halaco was comparable to Halaco grading its real property, and at that point in time, the City of Oxnard did not require any permit for grading. Accordingly, in my capacity as City Engineer I determined and informed Mr. Fine that Halaco did not need any additional permits for its then contemplated development."

Thurston's supplemental declaration stated that the building department was responsible for determining whether grading permits were needed for a proposed development such as that of Halaco, and that building department personnel had advised him that no permits for which that department was responsible were needed. He therefore did not reconsider whether a grading permit was necessary for the construction and operation of the settling ponds. "My determination concerned whether any other permits of any kind or nature were needed, considering, among other things, the purpose and nature of the settling ponds, the fact that they were to be constructed and operated in an M-2 heavy manufacturing zone, and that by their nature, their use over time would constantly change their dimensions and shape. While Halaco at that time intended to construct and operate three settling ponds, I generally considered the matter in terms of Halaco using a particular size area for settling pond purposes regardless of whether the particular area comprised one large settling pond or several small settling ponds."

5. A copy of an April 25, 1972, letter from the Oxnard Planning Director to Halaco advising that additional information including "the description of the waste products of the process and how they are to be handled" was necessary because a newly granted special use permit for an additional foundry building had been appealed, and Halaco's reply letter dated May 5, 1972. That reply again described the waste disposal process as including deposit on the eastern parcel.[16]

Other documents establish that a bridge over the drain was lawfully built in 1969 to connect the two parcels and facilitate the dredging and disposal operation.

---

[16]"Our raw materials are drosses, skimmings, sludge and scrap, including aluminum cans. We melt the above in rotary furnaces, and pour off the metal into ingots, pigs, sows, and anodes. The residues are washed. The solid material goes to a public dump or landfill, and to build up our low lying property." (The elevation of the eastern parcel is lower than that of the western parcel which had been built up by material deposited on it when it was the Oxnard city dump.) The permit was upheld on reconsideration after the appeal.

Halaco asserted that the permits under which it commenced operation in 1970 authorized not only the construction of its buildings and settling pond, but the operation of its business as an integrated process which included the use of the settling pond and disposition of material dredged therefrom on the northern berm and that the city was estopped to contend otherwise. This claim was supported by a September 21, 1979, letter from a deputy city attorney to counsel for the Regional Commission and Halaco. In that letter, also made part of the record of the administrative proceeding, the deputy city attorney stated that in 1969 the Oxnard codes did not make specific reference to settling ponds as permitted or prohibited in any zone, and that there had been none in use and no prior requests for construction of one. Halaco had actively and openly sought information from the city as to whether any permit was necessary for construction and use of the pond, and that Thurston was a responsible city employee with ostensible authority to make the statement that no permit was necessary. Based on this, and the construction, operation, and use of the pond for nine years without any assertion by the city that the use was improper or that any special use permit was necessary, the city attorney believed that it would be unfair and inequitable to require a special use permit, and that estoppel and laches would bar either that requirement or an action to enforce such a requirement. The city attorney declined to render an opinion as to what other permit or permits would have been legally required by the city in 1969 in light of the complex codes and lesser environmental concern at the time Halaco's inquiry was made. He stated, however, that "the mere fact that the use of the settling pond was quite apparent to the City during this period and the City refused to ask that a special use permit be applied for indicates that the City felt one was not necessary at that time."

No written administrative staff report was prepared for the September 28, 1979, hearing at which Halaco's application was first considered. A staff member recommended orally that the claim of exemption be approved for all of the developments on the western parcel except the propane tank.[17] Denial of the claim of exemption was recommended as to the propane tank, although it had local approval, because it had been installed after the permit requirement of the 1972 act became effective and in the opinion of the staff did constitute a development for which a permit was required.

The oral staff report noted with regard to the settling pond and waste disposal area that Halaco had submitted information that the pond was a

---

[17]These developments included: foundry buildings Nos. 1, 2 and 3; improvements to Perkins Road, a public street adjacent to the property; two underground diesel tanks; the bridge between the two parcels; and miscellaneous paving projects.

nonobnoxious manufacturing process which did not require a special use permit in the M-2 zone in which it was located; and that Halaco, based on the advice of the city engineer, had not been required to obtain a grading permit.

The staff nonetheless concluded that the pond was not a lawful use, reasoning that a local permit or variance had been required by Oxnard ordinances for the pond in 1969 because, although it was a use incidental to the smelting operation in the M-2 zone, the pond was on a separate parcel. The 1979 staff interpretation of the Oxnard ordinances in effect in 1969-1970 was that uses customarily incidental to an operation for which a special use permit is granted were covered by that permit, but this was true only if the use was on the same lot for which the permit had been granted. The staff acknowledged that the pond was a use incidental to the smelting operation.

The staff also interpreted the Oxnard ordinance to require a permit for the pond if it originally required a grading permit and was hazardous and/or obnoxious. The staff then asserted that a grading permit had been necessary at the time the pond was created. This assertion was based on (1) Oxnard's adoption prior to the time the pond was constructed of the Uniform Building Code which provided for grading permits for moving the amount of material that Halaco had bulldozed from the pond area to make the berms; and (2) the current opinion of an employee of the Oxnard Building and Safety Department that a permit would have been required in 1970 for the grading involved, and for berms that exceeded five feet. The staff also suggested that hazardous material was involved, but acknowledged that the hazardous waste division was still making its analysis, and that the Regional Water Quality Control Board had not found the presence of hazardous substances. The suggestion that the use of the pond involved hazardous material was supported only by asserting that a representative of the Department of Fish and Game felt otherwise (than did the Water Quality Control Board) and noting that there had been a question *in 1970* about whether the fluid discharge then being made into the drain was hazardous.

The staff also concluded that a permit had been and was required for expansion of the settling pond, i.e., for extending the northern berm by deposition on it of materials dredged from the pond. The staff reasoned that prior to February 1, 1973, Halaco had been depositing the dredgings within the perimeter of the original pond and berms, and only after that date began the northern expansion of the berm.

Halaco's president and general manager testified at the hearing regarding the use of the eastern parcel for a settling pond, the dredging and the deposition operations.

The commissioners then voted unanimously to approve the claim of exemption for the developments on the western parcel other than the propane tank. The members divided, denying the claim as to the propane tank in a vote of eight to three.

The members voted by a seven-to-four majority to deny the claim of exemption as to the operation of the settling basin by extension of the berms beyond the lines defined on the 1969 sketch. On a final voice vote the members unanimously passed a motion that Halaco's current operation not be suspended provided that a timely application was made for a permit to operate on that nonexempt portion of the eastern parcel.[18]

## IV.

The superior court reviewed the Commission decision on Halaco's petition for writ of mandamus filed pursuant to Code of Civil Procedure section 1094.5. (§ 30802.) Because the Commission itself had declined to hear Halaco's administrative appeal from the decision of the Regional Commission, the review was of the Regional Commission decision and proceedings.

■ The applicable substantive principles to be applied in determining a Coastal Act claim of vested right to construct a development were summarized by this court in *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785, 791. "[I]f a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. (*Dob-*

---

[18]Because the vote on the use of the eastern parcel did not follow the staff recommendation that the claim be denied, the staff recommendation that the oral reports be adopted as findings could not be accepted. As a result no findings were adopted by the Regional Commission at the September 28, 1979, hearing.

The administrative record includes a memorandum dated October 12, 1979, addressed to the Regional Commission, from the executive director, which proposed revised findings of fact, acknowledging that the action taken on September 28, 1979, differed from that orally recommended by the staff. The memorandum noted that the revised findings were submitted for adoption. The administrative record contains nothing to demonstrate that these findings were received or adopted by the Regional Commission to support its September 28, 1979, actions. The copy of the memorandum in the administrative record does not reflect receipt of the memorandum by the Regional Commission. It bears a file stamp dated October 22, 1979, indicating receipt by the "California Coastal Commission." Other documents in the record addressed to and received by the Regional Commission bear a file stamp indicating receipt by the "California Coastal Commissions South Central Coast Region."

Because the evidence before the Regional Commission was undisputed, and only the legal effect is in issue, the possible failure of the Regional Commission to adopt findings does not affect the ability of the trial court to assess the weight of the evidence or of this court to determine whether the trial court's decision is supported by substantial evidence.

*bins* v. *City of Los Angeles* (1904) 195 U.S. 223 [49 L.Ed. 169, 25 S.Ct. 18]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 784 [194 P.2d 148].) Once a landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied.'' Preparatory work will not give rise to a vested right, however, when it is done with knowledge that one or more additional permits will be required for actual construction. The government may apply the laws actually in effect at the time the additional permits are sought. (*Id.*, at p. 793.)

The legal arguments of the parties here require application and extension of the principles considered in *Avco* because *Avco* did not involve a claim of vested right to continue a previously lawful but presently nonconforming use of improved property. The vested right claim at issue in *Avco* was predicated on preparatory expenditures for grading and installation of improvements by a developer who had not yet acquired permits for the planned development. ■ The vested right claimed by Halaco is the right to continue a nonconforming use of improvements already constructed and of which the settling pond and disposal site are integral parts.

The staff of the Regional Commission, and its legal counsel, advised the Regional Commission that in their view Halaco could not acquire a vested right to the use of the settling pond and use of the remainder of the eastern parcel for disposal of dredged material. That advice was based on Halaco's failure to obtain a grading or special use permit for the development and use of that parcel and reasoning that the operation was not one previously permitted without such permits. Halaco took the position that no additional permits were needed inasmuch as the smelting operation including the use of the pond in the contemplated manner by filling and dredging onto the eastern parcel was an integrated operation permitted under the zoning law; construction permits and special use permits had been granted for the construction and operation of its smelter and foundry;[19] and the city in interpreting its own ordinances had determined that Halaco had all necessary permits.

The Regional Commission accepted neither approach. Instead it found that Halaco had acquired a vested right to use and dredge its settling pond

---

[19]Alternatively, Halaco claimed that the city, and thus the Regional Commission, were estopped to assert that it lacked any required permits in light of its inquiry, the advice of the city engineer and building department that no permits were needed, its expenditure of substantial sums for the construction of the pond in reliance on this advice, its open use of the pond and remainder of the parcel which was known to the city for eight years without complaint or demand for permit compliance; and its reliance on city officials' knowledge of the full extent of its operational method when with city assistance it moved to Oxnard and expended substantial sums in the construction of its plant.

in the manner in which it had been operated since 1970, but did not have a vested right to deposit dredgings on any part of the eastern parcel beyond the line of the perimeter of the settling pond sketched in the 1969 blueprint submitted by Halaco to the City of Oxnard at the time it inquired whether a permit for construction and use of the pond was required.[20]

■ The evidence in the administrative record is undisputed. We have said that in such case, the ultimate conclusion to be drawn from such facts is a question of law (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602]); and have applied that rule even in cases in which the evidence was circumstantial and susceptible of conflicting inferences (see *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 238 [82 Cal.Rptr. 175, 461 P.2d 375]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 74 [64 Cal.Rptr. 785, 435 P.2d 553]). ■ We have also recognized that where there is substantial evidence to support the decision of an administrative agency, and the inferences drawn from the evidence by an administrative agency are plausible, a reviewing court must uphold the decision and may not reweigh the evidence. (*Rivcom Corp.* v. *Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 756-758 [195 Cal.Rptr. 651, 670 P.2d 305].) It follows that where, because a fundamental right is involved the court exercises its independent judgment, the superior court judge may draw contrary inferences. ■ Where the undisputed facts from which the superior court draws an inference do not point to a single conclusion, an appellate court reviewing a decision of the superior court exercising its independent judgment on the weight of the evidence is bound by an inference drawn by the superior court. (*Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534,

[20]It is this question, not whether use of the disposal site is an "ongoing development" subject to additional permits, which the Commission and the superior court addressed in ruling on Halaco's vested rights claim. It is true, as suggested in the concurring and dissenting opinion, that there is no constitutional bar to the imposition of newly enacted regulations on existing industrial operations if the burden of compliance is not so great as to constitute a taking. What the dissent overlooks, however, is that the Coastal Act did not give the Commission the power to regulate existing industrial and commercial operations in the coastal zone. That authority lies in other local and state agencies.

The sole authority of the Commission was to control new development in the coastal zone by granting, conditioning, or denying permits. The Commission does not contend that Halaco's operation of the waste disposal site is new development because it is an ongoing operation. It argues that the permits which Halaco obtained when it constructed the settling pond and its berms did not authorize Halaco to extend those berms by depositing additional dredged material on the site. The statutory exemption from the permit requirement for persons who have acquired vested rights itself provides that "no substantial change may be made in any such development without prior approval having been obtained under this division." (§ 30608.) The question posed by Halaco's claim of exemption was therefore whether the permits it had permitted deposit of its dredgings over the entire site. The dissent does not address the sufficiency of the evidence to support the Commission's finding that they did not.

545 [122 Cal.Rptr. 315].) With respect to the undisputed facts, however, where only the legal effect of those facts is in issue, the conclusions of the trial court are not controlling on appellate review. (*Ibid.*)

 Applying these rules to the instant case we conclude that the judgment of the superior court must be affirmed.

a. *The Settling Pond and Water Disposal Site*

 The superior court concluded that the city, interpreting its own ordinances and the scope of the authorizations granted by the permits issued to Halaco, with full awareness of the nature of Halaco's operation and the intended development and use of its settling pond and waste disposal site, had determined that Halaco needed no additional permits when it commenced the construction of the pond and use of the waste disposal site.[21]

---

[21]The superior court made the following relevant finding of fact based upon its review of the administrative record: "The evidence presented to the Regional Commission on Halaco's settling pond and waste disposal site showed that Halaco acquired its Real Property with the intention of using a portion of it for the deposit of its solid waste, reiterated that intention in 1969 when Oxnard was interested in extending McWayne Boulevard, and planned the size of its pond to provide sufficient area for solid waste disposal and constructed it in such a way as to make it as convenient as possible to dispose of dredgings on the waste disposal site. Prior to that construction and use, Halaco actively and openly inquired of Oxnard whether a permit was needed for that construction and use. Halaco informed Oxnard of the nature, purpose, and operation of the pond, explaining how its use over time would cause a change in its dimensions and also submitted a not-to-scale sketch of the pond and waste disposal site (1969 sketch). As a result of Halaco's inquiry, both Oxnard's Building Department and the Department of Public Works through the City Engineer determined that no permits were required for the construction and use of Halaco's settling pond. The City Attorney of Oxnard confirmed that in 1969 Halaco actively and openly inquired of Oxnard and Oxnard determined that no permit was needed for the construction and use of its settling pond. Pursuant to the determinations by Oxnard's Building Department and the Department of Public Works, Halaco started and essentially completed the construction of its settling pond in 1970, and since that time has continuously operated that pond. In 1972, the Oxnard City Council specifically discussed Halaco's settling pond and impliedly reconfirmed Oxnard's prior determination that no permits were needed for the construction and use of that pond. Since the construction of the pond in 1970, Halaco has continuously used it as described. . . . During that time the size and use of the pond was such as to be obvious to Oxnard, and at no time did the City request that Halaco apply for a permit." The conclusion of law relevant to these findings was that the "preponderance of the evidence showed that Halaco intended to use its settling pond and waste disposal site in the manner in which it has continuously done so since 1970 and that that use was fully explained to, understood, and considered by Oxnard in its determination that Halaco did not need to obtain any permits. There was no evidence which supports a determination that Oxnard considered and determined that no permits were necessary for Halaco's settling pond based solely on the 1969 sketch or that its determination was only to the effect that no permits were needed for the construction of the settling pond in the dimension shown on the 1969 sketch as contrasted to the use of the settling pond."

These findings are not only supported by substantial evidence, as reflected by our summary of that evidence, but are supported by uncontradicted evidence. Although the Regional

To the extent that this conclusion is based on inferences drawn from the evidence it is supported by substantial evidence and we are bound by the superior court's conclusions. The unavoidable legal effect of this finding is a conclusion that the Regional Commission's determination that Halaco did not have a vested right to use the settling pond and waste disposal site in the manner contemplated in 1970 when construction began is not supported by the weight of the evidence.

b. *The Propane Tank.*

■ With the regard to the propane tank the superior court found that "the evidence presented to the Regional Commission . . . showed that with the exception of the 18,000 gallon propane tank, Halaco had constructed and operated its facilities prior to the effective date of the Act. . . ." Halaco does not dispute the fact that the propane tank was installed after the effective date of the Coastal Act and the uncontradicted evidence fully supports this finding. The court concluded as a matter of law that the tank constituted placement or erection of solid material in the coastal zone and was therefore subject to the permit requirements of the Coastal Act.

A "development" for which a permit is required under the Coastal Act includes "on land, in or under water, the placement or erection of any solid material or structure." (§ 30106.) A " 'structure' includes, but is not limited to, any building, road, pipe, flume, conduit, siphon, aqueduct, telephone line, and electrical power transmission and distribution line." (*Ibid.*)

Halaco contends that because the tank is personalty and is movable its placement on the property does not come within the statutory permit requirement. It characterizes the tank as equipment whose use is incidental to the smelting process of which it forms an integral part. It was not, however, an integral part of the process prior to 1973 when it was placed on the property. It is, therefore, a change or new development for which a permit was required if it meets the statutory definition of a development.

The evidence offered by Halaco in support of its claim of exemption for the tank is that it was purchased to provide standby propane fuel for the furnaces and forklifts at the foundry. It sits "loosely unattached on concrete saddles" and may be removed by a crane. It is not affixed to the property.

Commission may have drawn different inferences from that evidence, the trial court was free to draw its own inferences while exercising its independent judgment as to the weight of the evidence, and this court may do no more than determine whether the inferences drawn by the trial court are reasonable. (*Rivcom Corp.* v. *Agricultural Labor Relations Bd.*, *supra*, 34 Cal.3d 743, 756-758.) They are.

Halaco elected to install the tank as a less expensive and more convenient alternative to trucking propane onto the site in a trailer tank which would remain on the property until the fuel was consumed at which time a replacement trailer tank would be trucked in.

The record also reflects, however, the issuance of a permit for the installation of the tank issued by the Oxnard Department of Building and Safety. That permit describes the work as an addition to a commercial building, and describes the work to be done in conjunction with the installation as "foundation for tank—100 lin ft blk wall, 4' retainer w/8' blk." An Oxnard Fire Department permit was issued for "one (1) 18,000 gallon L.P.G. tank and vaporizer to be installed and used in accordance with N.F.P.A. pamphlet # 58."

Halaco's suggestion that because the tank is movable and is a substitute for a trailer tank it should be analogized to other equipment for which no permit is required such as automobiles and forklifts is unpersuasive. It is apparent from the acknowledged need to use a crane to install the tank, the construction of "saddles" on which to place it, and associated construction for which the permits were issued, that it is in a very real sense a structure erected on or solid material deposited on the property for which a permit was required. The trial court correctly concluded that the Regional Commission's denial of the claim of exemption for the tank was proper.

### V.

The Commission argues that because the superior court erroneously determined that no findings had been made by the Regional Commission, it exercised its judgment on the basis of assumptions that findings contrary to those recommended by the staff had been made. On that basis it is suggested that the matter must be remanded to the trial court. Alternatively, it is suggested that if no findings were adopted by the Regional Commission the trial court should have remanded the matter to the Regional Commission for the adoption of findings.[22]

The posture of this case makes remand unnecessary. As we have noted above, the Regional Commission did in its decision make findings of ultimate fact when it determined that Halaco does have a vested right to continue the operation of its foundry and smelting processes, and to the use of the settling pond. In those findings other findings were necessarily implied.

---

[22]Inasmuch as the Regional Commission has gone out of existence, this alternative is no longer available.

Inasmuch as the trial court was exercising its independent judgment as to the weight of the evidence, the court was able to assess whether that evidence supported the express and implied findings with respect to all of the individual components of the Halaco application. The court found that the weight of the evidence supported the implicit finding of the Regional Commission that the city was aware of the full extent of Halaco's plans for the use of the settling pond when Halaco was advised that no permits were needed, and had reconfirmed that conclusion in 1972 when the permit for the new foundry building was granted. The court also found that the weight of the evidence did not support a conclusion that this decision was based on, and no evidence supported a conclusion that the decision was based on, the 1969 sketch. These findings and the inferences drawn from the evidence are supported by substantial evidence.[23] The trial court properly ordered issuance of a peremptory writ directing the Regional Commission to approve Halaco's claim of exemption for all of its operations other than the use of the 18,000-gallon propane tank.

 When a court reviewing an adjudicatory decision of an administrative agency determines that the agency decision is not supported by the weight of the evidence, remand for further administrative proceedings is appropriate if the impact of that holding leaves open to the agency any further discretionary powers.

Here, however, the time within which hearings may be held and action taken expired more than five years ago, the administrative record is complete, and the weight of the evidence does not support the Regional Commission's conclusion that the applicant failed to establish a vested right to continue its use of the settling pond. That conclusion leaves no further discretion to the agency since it necessarily follows that the evidence does support the claim which must, therefore, be approved. The writ directing the Regional Commission to approve the claim of exemption as to the use of the settling pond was properly issued in these circumstances.

## VI.

### Attorney Fees

Halaco contends that the actions of the Regional Commission in handling its application were so arbitrary and capricious as to warrant an award of

---

[23]Even were we to accept the assumption that the revised findings proposed to the Regional Commission by staff in the October 12, 1979, memorandum (see fn. 16) were those adopted, the result should be the same. There is no evidence that the city's advice that no permits were needed for the development and use of the eastern parcel was limited to construction of the settling pond depicted in the sketch, and an inference to that effect, if drawn from the evidence in this record, would be unreasonable.

attorney fees pursuant to Government Code section 800. The trial court concluded, without explanation, that Halaco was not entitled to fees, but was entitled to costs.

Government Code section 800 provides that in an action to review an administrative determination the prevailing complainant may be awarded fees in a reasonable amount not to exceed $1,500 "where it is shown that the award, finding, or other determination of such proceeding was the result of arbitrary or capricious action or conduct by a public entity." Our review of the administrative record confirms that substantial evidence supports the trial court's implicit finding that the conduct of the Regional Board in considering Halaco's application was not wholly arbitrary and capricious.

"The award of attorney's fees under Government Code section 800 is allowed only if the actions of a public entity or official were wholly arbitrary or capricious. The phrase 'arbitrary or capricious' encompasses conduct not supported by a fair or substantial reason (*Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 62 [113 Cal.Rptr. 916]), a stubborn insistence on following unauthorized conduct (*Midstate Theaters, Inc.* v. *Board of Supervisors* (1975) 46 Cal.App.3d 204, 211 [119 Cal.Rptr. 894]), or a bad faith legal dispute (*Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 457 [129 Cal.Rptr. 216]). The determination of whether an action is arbitrary or capricious is essentially one of fact, within the sound discretion of the trial court. (*Mitchell* v. *State Personnel Bd.* (1979) 90 Cal.App.3d 808, 814 [153 Cal.Rptr. 552])." (*Kreutzer* v. *County of San Diego* (1984) 153 Cal.App.3d 62, 78 [200 Cal.Rptr. 322].)

Here, although the superior court concluded that there was no evidence to support the Regional Commission's decision that Halaco did not have a vested right to continue the use of its settling pond and disposal site, the record refutes any suggestion that the decision was arbitrary and capricious. Rather, it was reached after the members gave serious consideration to the relevant evidence, had difficulty in assessing its legal significance, and in good faith attempted to reconcile what they believed that evidence to show with the advice they received from staff and counsel.

The judgment is affirmed.

Each party shall bear its own costs.

Broussard, J., Lucas, J., and Eagleson (David N.), J.,* concurred.

---

*Associate Justice, Court of Appeal, Second District, assigned by the Chairperson of the Judicial Council.

**REYNOSO, J.,** Concurring and Dissenting.—I concur in the judgment insofar as it upholds the trial court's denial of the claims by Halaco Engineering Company (Halaco) to an exemption for the propane tank and to attorney fees. I respectfully dissent, however, from the majority's holding that Halaco is entitled to the exemption, denied by defendant South Central Coast Regional Commission, for the continued use of its settling pond and waste disposal site. I cannot agree that the City of Oxnard's approval of the construction and use of the pond and adjoining land as a waste disposal site, as found by the trial court, gave Halaco a vested right to engage in an ongoing process of industrial waste disposal within the coastal zone absolutely free of any regulation by the California Coastal Commission (Commission) through enforcement of reasonable conditions attached to a coastal zone development permit.

As the majority opinion recognizes, the only issue presented here is whether Halaco is entitled to escape even *applying* to the Commission for a permit to continue dumping waste dredged from its settling pond upon an ever-expanding area of its eastern parcel. "The burden of compliance with the permit requirement is insubstantial, and the Commission might, after all, grant the permit or impose conditions which are not sufficiently onerous to constitute a taking or otherwise offend principles of due process." (Majority opn., *ante,* p. 64.) Yet the majority goes on to affirm a judgment that denies the Commission power to impose even those admittedly constitutional conditions upon the continuation of Halaco's waste disposal operation.

Public Resources Code section 30600, subdivision (a), generally requires anyone "wishing to perform or undertake any development in the coastal zone" to "obtain a coastal development permit."[1] Section 30607 provides that any such permit "shall be subject to reasonable terms and conditions in order to ensure that such development or action will be in accordance with the provisions of this division," i.e., the provisions of the California Coastal Act of 1976 (Act) (§ 30000). Chapter 3 of the Act (§ 30200 et seq.) sets forth a host of environmental "standards by which the . . . permissibility of proposed developments subject to the provisions of [the Act] are determined" (§ 30200). This statutory scheme clearly empowers the Commission not only to allow or prohibit proposed developments but also to regulate the manner in which the development is "performed" (§ 30600, subd. (a)) by imposing and enforcing reasonable conditions attached to the permits issued.

Section 30608, under which Halaco seeks complete exemption from such regulation, does not define "vested right." The meaning of that phrase in

---

[1]All section references are to the Public Resources Code unless otherwise indicated.

California law has been elucidated almost entirely with respect to claimed rights to construct buildings or other static improvements. (See, e.g., *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].) Once lawful construction work has passed a certain point, it is deemed unfair to interfere with completion of the structure as planned because without completion, the time and resources already expended would be wasted.

The "development" here, however, consists not of a structure but of an ongoing process, i.e., the dumping of solid waste disposal, derived from drosses, skimmings, sludges, and scraps, over an ever-widening area up to the boundaries of the parcel. (See § 30106, including in the definition of "development," the "discharge or disposal of any dredged material or of any gaseous, liquid, solid, or thermal waste.") Though the ultimate result of that disposal process may be hills or banks of material with predictable dimensions, their formation is not the purpose of the process; indeed, their disappearance would aid, not hinder, Halaco's stated objectives. Unlike the developer of a construction project, whose inherent interest (other things being equal) is to complete construction as soon as possible, the "developer" of an ongoing industrial process, such as Halaco, normally wishes to prolong it as long as possible. Thus, developments consisting of ongoing uses may fairly be subject to regulation from which a construction project, on which substantial lawful work has already been done, should be exempt.

Section 30608's use of the undefined phrase "vested right" to delineate a development's exemption from the permit requirement implies an exemption no broader than that which is constitutionally required. A nonconforming use may be validly subjected to "a strict policy against [its] extension or enlargement" (*County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683, 687 [234 P.2d 972]) and may be eliminated by reasonable amortization (*Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 881-885 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds, 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882]) or whenever it becomes a nuisance (*City of Escondido* v. *Desert Outdoor Advertising, Inc.* (1973) 8 Cal.3d 785, 790 [106 Cal.Rptr. 172, 505 P.2d 1012]; *Livingston Rock etc. Co.* v. *County of L.A.* (1954) 43 Cal.2d 121, 128 [272 P.2d 4]). The question whether Halaco's dumping operation could be legally eliminated by these or other means, however, need not be reached here, for Halaco should be required to apply for a permit even if the only possible result is the subjection of its operation to Commission regulation through the imposition of reasonable conditions upon issuance of the permit.[2] Even though Halaco may have a vested right

---

[2]There is an arguable analogy between Halaco's claim of a right to continue dumping

against outright denial of a permit for its dumping operation, it does not have such a right to issuance of a permit free of reasonable regulatory conditions. (*United States* v. *Riverside Bayview Homes* (1985) 474 U.S. 121, — [88 L.Ed.2d 419, 426, 106 S.Ct. 455, 459]; *American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 607 [186 Cal.Rptr. 345, 651 P.2d 1151].)

As the majority points out, a developer who claims a vested right as a basis for exemption from the permit requirement of the Act must first seek confirmation of the claim by the Commission and may not first assert the claim as a defense to Commission enforcement proceedings. (*Ante,* p. 63; *South Coast Regional Com.* v. *Gordon* (1977) 18 Cal.3d 832 [135 Cal.Rptr. 781, 558 P.2d 867]; *State of California* v. *Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281].) That rule, however, does not bar the developer from applying for a permit and asserting, in the application proceeding, a constitutional or vested right to (1) issuance of the permit, albeit with conditions, and (2) freedom from overly onerous conditions. Halaco's remedy is to pursue that course. "[I]t is sheer guesswork to conclude that the Commission will abuse its authority by imposing impermissible conditions on any permits required. . . . If the Commission does impose questionable conditions, the affected landowners may of course pursue their remedy of a petition for writ of administrative mandamus to review the factual and legal bases for the conditions imposed." (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 174 [188 Cal.Rptr. 104, 655 P.2d 306].)

Accordingly, I would reverse the judgment below insofar as it grants a writ to require confirmation of a vested right in Halaco to continue its use

---

waste to the outer limits of its parcel and claims by operators of quarries or similar extractive enterprises to immunity from zoning laws purporting to prohibit their operations but enacted after the business was under way. The analogy is imperfect because it would be physically possible to move Halaco's dumped material to a different location whereas the extractive enterprise cannot take out the rock or other earth material anywhere but at its original location. (*McCaslin* v. *City of Monterey Park* (1958) 163 Cal.App.2d 339, 349 [329 P.2d 522].)

In *McCaslin,* a quarry operator obtained an injunction against enforcement of an ordinance that would have limited the quarrying operation to the area already excavated. The operator was held entitled to extend the excavations to the entire tract. A constitutional barrier to legislative prohibition of the continuation of an existing extractive business, however, does not preclude reasonable legislative restrictions on the manner of conducting the business. (*Id.,* at pp. 347-348; *Dock Watch Hol. Quarry Pit, Inc.* v. *Tp. of Warren* (1976) 142 N.J. Super. 103 [361 A.2d 12, 20] ["Nonconforming uses are clearly subject to . . . police power regulations"], affd., 74 N.J. 312 [377 A.2d 1201]; *Flanagan* v. *Town of Hollis* (1972) 112 N.H. 222 [293 A.2d 328]; *People* v. *Gerus* (1942) 19 Misc.2d 389, 393-394 [69 N.Y.S.2d 283, 288].)

of the settling pond and waste disposal site without obtaining a coastal development permit.

Bird, C. J., concurred.